[Crim. No. 2334. Second Appellate District, Division Two.—November 1, 1933.]

THE PEOPLE, Respondent, v. ALFRED WILLIAMSON, Appellant.

L. J. Faust for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

ARCHBALD, J., *pro tem.*—Appellant was accused by an information filed by the district attorney of the crime of forgery, in two counts, and also with three prior convictions of felony, one of which was afterwards withdrawn and the two remaining were admitted. He entered a plea of not guilty to the two counts of forgery. The jury found him

not guilty as to count I, but guilty as to count II. From the judgment of conviction entered on said verdict and from the order denying his motion for a new trial he has appealed.

The evidence as to count II shows that on February 27, 1932, appellant went to the grocery-store of Morris Boguslaw and gave him a check for $25 drawn on the Security First National Bank of Los Angeles, Cahuenga and Hollywood branch, signed "O. Fuller", and payable to the order of Al Williamson. This check was given in payment of the bill of one Mrs. Goodhue, amounting to $15, and appellant was paid by Boguslaw the balance of $10 in cash. Appellant's name was indorsed on the reverse side of the instrument. The check was later sent to the bank and returned unpaid. There was no account in said bank in the name of O. Fuller during the month of February or at any other time. Police Officer Lynde arrested appellant June 29, 1932, and had a conversation with him the next day to the following effect: "I showed him the check and asked him if he had ever seen it before and he said he had, and that he cashed the check and paid an old lady's bill and received some change back. I asked him if he knew anyone by the name of O. Fuller. He said he didn't, that is just a fictitious name. I asked the defendant if he wrote the check. He hesitated awhile and then said he did." The officer then identified specimens of appellant's handwriting. A handwriting expert, H. C. Nutt, compared said specimens of handwriting with the $25 check and testified that all were written by the same person.

At the beginning of the trial a jury was impaneled and sworn and the first witness for the prosecution was sworn and began testifying. After a few questions were asked the following occurred: Juror No. 4 was Frank H. Eager. His brother called the courtroom while the witness was testifying to advise Mr. Eager that his sister had passed away suddenly. The bailiff informed the judge and the following took place in the courtroom:

"The Court: Will Juror No. 4 step into the court's chambers and talk on the telephone? Someone wants him on the phone. Will counsel approach the desk?

(Juror No. 4, Mr. Frank H. Eager, steps out of the jury-box into the judge's chambers. Balance of jury remain in box.)

(Conference at bench.)

(Juror returns to courtroom, standing in front of jury-box.)

"The Court: Do you want to be excused?

"Juror: Yes, sir.

"The Court: Well under the circumstances I think you should be excused. You are excused."

The juror then took his hat and coat and left the court-room, after which there was a further conference at the bench, and the following occurred:

"The Court: Mr. Bailiff, will you please go and find the juror and bring him back here?"

The bailiff left the room and returned with the juror, apparently almost immediately. Then the following transspired:

"The Court: Mr. Eager, if we continue this case until Monday morning at 10 o'clock, do you think you can be back here at that time?

"Mr. Frank H. Eager (Juror No. 4): Yes sir.

"Mr. Johnson: May I ask if counsel will stipulate with me that there is no irregularity?

"Mr. Faust [Counsel for defendant]: We will so stipulate."

The court then admonished and excused the jury until the following Monday morning at 10 A. M., and further stated: "Let the record show that juror No. 4, Mr. Frank H. Eager, was excused by the court, and no proceedings were had until he was recalled; that he just walked out of the courtroom and as he went out in the hallway he was recalled, and then he was back to the jury box and the case was continued until Monday morning." At the session Monday morning appellant objected to any proceeding being had with Eager as one of the jurors, "he having been excused and then re-called, and the defendant's peremptory challenges not having been exhausted".

Appellant urges that the court erred in "excusing" the juror while the trial was in progress and in recalling him after so "excusing" him, instead of declaring a mistrial or summoning another juror; that when the court "excused" the juror he became a stranger to the case and the court had no power to recall him; that by so doing the court deprived appellant of the right to trial by a jury of twelve

persons; that the effect of Mr. Eager's participation in the case amounted to misconduct on the part of the jury, preventing a fair consideration of the case, and resulted in a verdict by means other than a fair expression of opinion on the part of all the jurors.

About two-thirds of appellant's opening brief is used to discuss the points based on the incident described. There can be no question but that where a juror is discharged he becomes a stranger to the case and cannot thereafter be recalled and placed on the panel. (*Isaac* v. *State,* 39 Tenn. 289.) The weakness in appellant's argument is in its base, which rests upon the assumption that the juror was "discharged". No doubt the court in the stress of the moment intended to discharge the juror. However, before the latter had reached the elevator he was recalled, after it was ascertained that if the case could be continued until the following Monday the trial could proceed. We think the jurisdiction of the court over the proceedings before it gave it the power to do as it did; that its action in effect rescinded the order theretofore made excusing the juror, while yet it could do so, and that the result of such action was to leave the case where it was before the incident occurred. The case was tried before twelve jurors properly impaneled and sworn, and we see no merit in appellant's contention. ■ If there was any error it was simply one of procedure, and after appellant's stipulation it is too late to complain. Furthermore, it is not claimed that anyone talked to the juror or that anything happened to disqualify him other than what we have related, and we fail to see how any prejudice resulted. Even if there was a technical error, it came within the healing provisions of section $4\frac{1}{2}$ of article VI of the Constitution.

■ The court instructed the jury in substance that if it found that the name of O. Fuller was signed to the check by appellant "with intent to defraud M. Boguslaw and the Security-First National Bank of Los Angeles, or either of them", as charged in count II of the information, they should find defendant guilty. The information charged an intent to defraud "M. Boguslaw and the Security-First National Bank of Los Angeles". We see no merit in the claim that such instruction was misleading and confusing. The verdict supported the judgment if the evidence showed

780

that the intention was to defraud Boguslaw only. (*People* v. *Stine,* 110 Cal. App. 156 [293 Pac. 907].)

 Appellant also urges that because of the fact that a handwriting expert testified in the case, the court misdirected the jury in failing to instruct them upon the subject of expert testimony as required by section 1127b of the Penal Code, which section reads, so far as material here, as follows: "When in any criminal trial or proceeding, the opinion of any expert witness is received in evidence, the court *shall* instruct substantially as follows: . . . No further instruction on opinion evidence need be given." (Italics ours.) It is contended that it was the duty of the court to give such instruction even though not requested by defendant so to do. Respondent answers that the general rule applies, viz., "that where a party in a criminal case fails to ask the court to give instructions to the jury upon a particular point, he cannot complain of error on the part of the court in not giving the instructions" (*People* v. *Rogers,* 163 Cal. 476, 484 [126 Pac. 143]). The court in the case cited says: "This appears to be the conclusion reached in other states where the question has been presented, except in Washington, where a statute in terms provided that '*it shall be the duty of the court to instruct the jury* that no inference of guilt shall arise against the accused if he fail or refuse to testify· as a witness in his own behalf'. (See *State* v. *Myers,* 8 Wash. 183 [35 Pac. 582].) We have no statute here that specifically requires any instruction on this subject." Section 1127b was adopted in 1929 (Stats. 1929, p. 1939), and our attention has not been called to any case construing its apparently mandatory provision.

Seemingly the mandatory nature of the statute of Washington was first upheld in the case of *Linbeck* v. *State,* 1 Wash. 336 [25 Pac. 452], where the court said: "The defendant was not sworn as a witness in his own behalf, and the court failed to instruct the jury, as required by statute, that from such fact no inference of guilt should be drawn. We think this was error. The statute in question makes it the duty of the court to give such instruction, irrespective of the action of the defendant in relation thereto; and, while we do not now hold that the right to have this instruction given may not be waived ·by some express act of the defendant· to that end, we do hold that the simple fact

that he remained silent did not amount to such waiver.'' In the case of *State* v. *Myers, supra,* it was urged that while the defendant did not request the particular instruction, he did ask for certain specific instructions, and apparently the claim was made that such action should be held to be a waiver of his right to the particular instruction under the statute. The court, however, was not impressed with the contention made, and after discussing the cases laying down the general rule which we have quoted, among them some from California, said: ''Such cases, it can plainly be seen, are no basis whatever for decisions on questions of the kind at bar, where the law has attached so much importance to this particular instruction, and has called it especially to the attention of the court, and given it especially into its charge.'' We doubt if the decision of our own Supreme Court would have been as it was in the case of *People* v. *Rogers, supra,* if a statute had made it the duty of the court to give the instruction therein involved. Section 1127b of the Penal Code says the court ''shall instruct'', not ''shall instruct, if requested so to do'', and we do not believe the general rule is applicable where a mandatory statute applies, as here. In our opinion it was error to fail to give the statutory instruction as to expert witnesses.

■ In the instant case the court did give the usual instruction as to the jurors being the sole and exclusive judges of the effect and value of evidence and the credibility of witnesses. The jury had before it the statement made by appellant to the police officers admitting facts from which it could only be concluded that O. Fuller was a fictitious person, existing only in the imagination of appellant, and that appellant forged the check in question. After an examination of the entire cause, including the evidence, we fail to see how a different verdict could have been reached, even if the omitted instruction had been given. Under such circumstances, is the saving grace of section 4½ of article VI of the state Constitution of any avail? We think it is.

■ That such a statutory rule, though mandatory in its nature, is purely procedural and does not create substantive rights, there can be no doubt. It simply directs a step in the proceeding after a party is brought into court. ''The word [procedure] means those legal rules which direct the course of proceedings to bring parties into court, and the

course of the court after they are brought in.'' (*Kring* v. *Missouri*, 107 U. S. 221 [2 Sup. Ct. 443, 27 L. Ed. 506].) In this connection see the case of *State* v. *Pavelich*, 153 Wash. 379 [279 Pac. 1102], which upheld a rule of the Supreme Court which abrogated the statutory rule compelling the court to give the instruction referred to in *State* v. *Myers, supra,* as unconstitutional. Speaking of the statute in which such requirement is found, which, among other things, made a defendant in a criminal case a competent witness in his own behalf, guaranteed the constitutional right that nothing should be construed to compel him to offer himself as a witness, and, in the last clause, stated the statutory rule discussed in the case of *State* v. *Myers, supra,* the court in the Pavelich case said: ''The last proviso in the statute was not a constitutional provision, *but merely a statutory and procedural provision.''* (Italics ours.) In a case of the same name, but involving a different defendant, reported in 273 Pac. 182, speaking of the same statute and the constitutional provisions first mentioned therein, the Washington court said: ''The statute which remained in force after the adoption of the Constitution was of course not a legislative protection to the accused in criminal cases already afforded by the Constitution. The statute went further, however, and *in a purely procedural way* provided for the court to instruct the jury . . . '' (Italics ours.)

We cannot think that the legislature intended by the statutory provision under consideration to say that the court should not exercise its constitutional duty under said section 4½ of article VI, or to give to the instruction provided for therein any more sacredness than one given by the court at the request of the parties, but that it did intend that the instruction should be given where applicable. Section 4½ is equally mandatory in its nature, and applies to any ''misdirections of the jury'' or error ''as to any matter of procedure''; and as we cannot see where any miscarriage of justice has resulted from the failure to give the missing instruction we have no power to set the judgment aside.

██ We see no merit in the contention that the judgment is not supported by the evidence. On cross-examination of Boguslaw it was attempted to show that he was told by appellant to hold the check for three or four days. The

witness said he did not recall any such conversation. The matter was for the jury to determine, and not for this court.

In our opinion the evidence amply establishes the intent to defraud. Such intent follows from the deliberate commission of an unlawful act (*People* v. *Ball*, 102 Cal. App. 353 [282 Pac. 971]), and the evidence does not support any other conclusion than that the act was committed deliberately and wilfully.

█ The purpose of an information is to advise a defendant of the crime with which he is charged. The information in the instant case charges forgery, and the case was tried on the theory that forgery was the offense charged. The verdict was "guilty of forgery, a felony". Appellant urges that the evidence shows only the making, passing, etc., of a fictitious check, and not forgery, citing as authority the cases of *People* v. *Elliott*, 90 Cal. 586 [27 Pac. 433], and *People* v. *Eppinger*, 105 Cal. 36 [38 Pac. 538]. Those cases arose prior to the amendment of section 470 of the Penal Code in 1905, since which time it is immaterial whether the forgery is of the name of an existing or a fictitious person. (*People* v. *Gayle*, 202 Cal. 158 [259 Pac. 750].)

Judgment and order affirmed.

Stephens, P. J., and Craig, J., concurred.

A petition to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 1, 1933.