[Crim. No. 3922. Second Dist., Div. One. Mar. 25, 1946.]

THE PEOPLE, Respondent, v. VICTOR A. BRAC, Appellant.

Jesse Bach Porter for Appellant.

Robert W. Kenny, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the district attorney of Los Angeles County, appellant was charged with the crime of "contributing to delinquency" (of a minor), a misdemeanor, in violation of section 702 of the Welfare and Institutions Code, in that he "did willfully and unlawfully furnish, deliver and sell to and by acts, encourage the possession of pentobarbital, a derivative of barbital, by . . . and . . ., minors under the age of 21 years, . . . without first receiving or requiring an order or prescription of a physician or other person authorized to issue the same, contrary to section 347½ of the Penal Code of the State of California, and did further make said delivery in an unlabelled bag or container contrary to section 26252 of the Health and Safety Code of the State of California. All of which willful and unlawful acts and course of conduct on the part of the defendant, as aforesaid, did cause and manifestly tend to cause the said minors, . . . to

become and to remain persons within the provisions of one or more of the subdivisions of section 700, Welfare and Institutions Code of the State of California.''

To the foregoing information defendant entered a plea of not guilty, and after trial before a jury, he was found ''guilty of contributing to delinquency, a misdemeanor, as charged in the information.'' From the judgment of conviction and the order denying his motion for a new trial defendant prosecutes this appeal.

Viewing the evidence in the light most favorable to the prosecution, as we must do following a guilty verdict, it appears that on the afternoon of July 15, 1944, Raymond ——, one of the minors involved herein, a boy 16 years of age, was in the vicinity of appellant's drug store on North Main Street in the city of Los Angeles. He gave some money to his companion, who in turn gave it to a third boy, who went into the drug store and emerged with a paper bag containing twelve pills. Raymond testified that he began taking the pills about four or four-thirty in the afternoon; ''after taking two or three in about fifteen minutes I didn't know what I was doing. . . . On taking the pills in about twenty minutes or so they take effect on you and you get so that you don't know what you are doing, like a drink of whiskey only it may be worse.'' At about seven o'clock that evening Raymond was arrested in a pool hall by Police Officer John Neubert, who testified that although Raymond's breath had a ''slight tinge of alcohol,'' he did not appear to be drunk, but rather in a ''stupid condition.'' While walking to the police station, Officer Neubert found some ''little yellow capsules'' in the lining of Raymond's jacket.

Raymond remained in jail until July 21. On that date he was taken to the office of the Los Angeles County Sheriff's Narcotic Detail, where his clothes, shoes and person were searched. Deputy Sheriff Johnston then delivered to Raymond a marked dollar bill. Deputy Johnston and three other officers then drove Raymond to the vicinity of appellant's drug store. Officers Johnston and Dowdy watched from across the street, while Officer Ellis followed Raymond. The officers saw Raymond hand the dollar bill or what looked like it to a boy named Tony (the second minor mentioned in the information). Tony went into the drug store and in a few minutes emerged with a small brown paper bag, which he handed to Raymond. The officers thereupon recovered the brown paper bag from

Raymond. It was found to contain five yellow capsules. The officers entered the store, recovered the marked dollar bill, and took appellant into custody. They examined the prescription file in the store and found no prescriptions on file for that day. Two of the officers testified that they saw empty bottles labelled ''pentobarbital'' and ''sodium.''

The testimony of Fred Wolfe, a chemist in the sheriff's office, taken at the preliminary examination, was read into the record. Mr. Wolfe's qualifications were admitted. He testified that the capsules contained in the bag obtained from defendant's drug store on July 21, 1944, contained a derivative of barbiturate acid, each capsule containing a grain and a half of the drug. His tests did not show from what compound it was derived or what firm might have prepared it, but, he stated, yellow capsules indicated that they were pentobarbital, which also went under the trade name of Nembatol. Abe Franklin, a pharmacist and president of the State Board of Pharmacy, testified that Nembatol is a trade name for sodium pentobarbital, which is a barbiturate acid; that such pentobarbital pills come in grain and one-half sizes, the size referring to the amount of drug in the capsule.

Tony, the second minor involved, testified that he received the dollar bill from Raymond; that he gave the bill to defendant and received from him the paper bag containing the five capsules. He further testified that during the trial he had a conversation with defendant, as follows: ''A. He said that they want to use me as a witness and I says, 'I don't know,' he said, 'Tell them at no time I gave that to you.' Q. What did you say? A. I said, 'I get what you want.' ''

The defendant did not take the stand in his own behalf, and offered no evidence except that of his wife, who testified that she was in the store about a half hour before the officers came; that she saw the boy Tony there; that the officers did not go to the prescription room that day, but did return two days later; that no prescriptions were filled while she was in the store and that she did not see the defendant deliver a package to Tony. Her remaining testimony contradicted that of the officers as to occurrences in the drug store in minor particulars.

 Appellant first contends that the verdict is unsupported by the evidence. It is urged that no violation of law was shown for the reason that section 347½ of the Penal Code makes no mention of pentobarbital, but authorizes the refilling of a prescription for phenobarbital, and no testimony was

offered as to the having of a prescription or the lack of one by either of the boys. This contention is without merit. Section 347½ of the Penal Code (in effect at the time of the offense herein charged) made it unlawful to sell any "veronal, barbital (acid diethylbarbituric) or other barbituric acid derivative of their salts, derivatives, or compounds of the foregoing substance, . . . or their salts, derivatives or compounds, except upon the order or prescription of a physician . . .; provided, however, that any prescription for phenobarbital or any preparation, mixture or compound of phenobarbital may be refilled. . . ." The evidence hereinbefore narrated was ample to warrant the jury in concluding that the defendant sold the yellow capsules on the dates in question and that such capsules contained a barbituric acid derivative.

■ It was not incumbent upon the prosecution to demonstrate the absence of a prescription. (*People* v. *Le Baron,* 92 Cal.App. 550, 568 [268 P. 615, 269 P. 476].) In the cited case it was said: "We may add that if the defendant in a case, like the one here, is prosecuted under the State Poison Act, and his possession of any of the narcotics falling under the condemnation of the statute is upon the prescription of a physician given in good faith or for purely medicinal purposes, he may shield himself against punishment by exhibiting the prescription and so proving the fact that such possession was lawful. (*People* v. *O'Brien, supra* [96 Cal. 171 (31 P. 45)].) No such proof was offered in the present case." (See, also, *People* v. *Bill,* 140 Cal.App. 389, 393 [35 P.2d 645]; *People* v. *Smith,* 54 Cal.App.2d 587 [129 P.2d 732].)

■ Appellant also challenges the sufficiency of the information, asserting that the commission of two separate acts is charged in the conjunctive; that one act is improperly pleaded, and that it cannot be determined that the accused was found guilty on the charge which was properly pleaded, citing *People* v. *Garnett,* 129 Cal. 364 [61 P. 1114], and *People* v. *Mitchell,* 92 Cal. 590 [28 P. 597, 788]. It is true that the information does state that the defendant "on or about the 21st day of July, 1944, and within one year last past and on occasions prior to the filing of this information, did . . . sell to and by acts, encourage the possession of pentobarbital" by the two minors involved; but whatever uncertainty there might be in the information as phrased, no prejudice to appellant is shown. "The purpose of an indictment or information is to inform the accused of the charge which he must

meet at the trial. . . . The former requirement that a pleading must set forth the particular circumstances of the offense charged, as now amended declares that it shall be sufficient if it charges 'in any words sufficient to give the accused notice of the offense of which he is accused.' (Sec. 952, Pen. Code.) The appellant herein was entitled simply to notice of the offense of which he was charged, but not to the particular circumstances thereof, such details being furnished him by the transcript of the testimony upon which the indictment was founded." (*People* v. *Yant*, 26 Cal.App.2d 725, 730 [80 P.2d 506].) In the instant case appellant did not demur to the information nor did he move in arrest of judgment, and in such circumstances he must be held to have waived any objections upon the ground of uncertainty. (*People* v. *Perfetti*, 88 Cal.App. 609, 615 [264 P. 318].) In the last-cited case it was said: "No demurrer was interposed by the defendant in this case. Thus, all the objections which have been urged upon this appeal are completely answered by this section under the terms of which the appellant must be held to have waived any of the alleged defects. After sitting still and taking chances on the verdict of the jury, he cannot now come into this court and urge that sections 950, 951 and 952 of the Penal Code, as well as 954 thereof, were not complied with. The authorities that an appellant is precluded from raising such objections upon appeal after having failed to demur are too numerous for citation. . . . *People* v. *Lauman*, 187 Cal. 214 [201 P. 459]; *People* v. *Welton*, 190 Cal. 236 [211 P. 802]."

It is next urged that "the court erred in refusing the request of counsel that the jury be interrogated if they had discussed the case with newspapermen." In this connection the record discloses the following:

"MR. PORTER (Defendant's counsel): I am placed in an unfortunate position, I wanted a matter of record here. Papers were actually shown right here in the front to the jurors with prepared statements of what the witnesses would testify to in this case, as to what they were going to testify to, also at the same time the testimony of Raymond . . . and some other testimony which has not been given here and those papers were put out with front headlines and they were put out there so that they would be available to the jury at the time when they came out.

"THE COURT: Right out where, be more specific about it.

"Mr. Porter: Some time after round about 5 o'clock some of these papers were available after the session here.

"The Court: But those papers were not available at noon here.

"Mr. Porter: There is an edition that comes out at 5 o'clock but this was before that, at any rate, it was out here, some of these were picked up where they were being sold right outside here.

"(Discussion between court and counsel not transcribed.)

 • • • • • • • • •

"The Court: Well, have you a request to make that you want me to do anything?

"Mr. Porter: I would like to ask that the jury be interrogated if they have discussed with any of the newspaper men.

"The Court: I am not going to insult any juror by asking him anything like that. I have fully admonished them each time we have adjourned and I am not going to assume they have violated my instructions."

The court had previously admonished the jury as follows:

"Ladies and gentlemen of the jury, counsel called my attention to a matter I intended to take up with you anyhow. Apparently there have been several newspaper articles published about this trial. Many of them contain material that cannot and will not be introduced in evidence at this trial. I am instructing you as jurors to endeavor to use the precaution not to read any newspaper accounts of this trial but to get your information and your knowledge of the facts of the case as they are brought out in court. I think that is as far as I can go. The newspapers have the right to publish whatever they please, but I can admonish the jury it is their duty as jurors to refrain from reading the articles and obtain any information in any other way than from the legal evidence here in court."

The foregoing constitutes the entire showing made by appellant on the subject of newspaper influence. In view of the court's specific admonition, as well as its instructions to the jurors that they should consider only the testimony and evidence produced in court, it must be held that no substantial injury has been made to appear. (*People* v. *Phillips,* 120 Cal. App. 644, 652 [8 P.2d 228].)

 It is urged that the court erred in admitting and in refusing to strike all evidence of the boy Raymond as to the transaction of July 15 "as to events and transactions not in

the presence of the defendant and with which the defendant was never connected, and which did not occur on the date of the alleged offense.'' The testimony of the boy Raymond as to the transaction on this date was sufficient, if believed, to show that the drugs he obtained on that day were secured from the defendant's drug store. Taken in conjunction with all the other evidence in the case, this evidence warranted a conclusion by the jury that it was the defendant himself who sold the drugs on the earlier date as well as on July 21st. In *People* v. *Brown*, 37 Cal.App. 101, 103 [173 P. 621], it was said: ''It is to be noted that the crime of contributing to the delinquency of a juvenile may be of a continuing character; in fact, the offense is usually made of a series of overt acts or of a continuous chain of omissions. The information now before us plainly attempts to charge a crime of that character.'' So in the instant case, the information charged the commission of acts tending to cause delinquency ''on or about the 21st day of July, 1944, and within one year last past *and on occasions prior to the filing of this information.*'' While perhaps not a model of certainty, the information did inform the defendant that he was being accused of more than one act of furnishing drugs, ''all of which . . . acts . . . did cause and manifestly tend to cause the said minors . . .'' to become delinquent. As was said in *People* v. *Oliver*, 29 Cal.App. 576 [156 P. 1005], ''. . . evidence of the several acts of the defendant which were shown for the purpose of establishing against him the crime charged in the information is admissible, . . . Under the so-called juvenile court law, any conduct upon the part of a person toward a minor which either causes or tends to cause such minor to become or remain a dependent or delinquent person may be shown, and such conduct may consist of one act only or a series of acts. While one of such acts may be sufficient to constitute the specific crime of contributing to the dependency of the minor, a number of different acts leading to the same result can have the effect of doing no more.'' (See, also, *People* v. *Koosistra*, 58 Cal.App. 277 [208 P. 316].) Also noteworthy in this connection is *People* v. *Baker*, 38 Cal.App. 28, 35, 36 [175 P. 88], where in a prosecution for contributing to the delinquency of a minor by selling him liquor, evidence that the minor had previously purchased and drunk liquor was held admissible to show that he was a person likely to remain addicted to the use of intoxicants.

It is next asserted that the court erred in admitting

into evidence portions of the record of the case of *People* v. *Tony* ——, who was charged with contributing to the delinquency of the minor Raymond. The record discloses that appellant's attorney brought out on cross-examination of the witness Tony that the criminal action against him had been dismissed, whereupon the district attorney introduced evidence to show that a "juvenile petition" against Tony, arising out of the same transaction, was still pending. Defense counsel had asked the witness Tony, "Did you have any conversation with anybody in the District Attorney's office of this County whereby it was agreed between you and them with respect to you testifying against Mr. Brac in this case if they would dismiss that case against you?" to which the witness replied, "Yes, sir." The appellant having brought out the charge that the witness was testifying in hope of reward, the prosecutor was warranted in introducing evidence that the proceedings had not been dismissed. Having thus opened the door, the appellant may not complain that the prosecution's rebuttal unduly prejudiced him. Nor may he complain of a reading of a portion of the district attorney's recommendation in connection with the dismissal. The trial court interrupted the reading of it and directed the jury to disregard it.

■ Appellant argues that the court erred in permitting testimony as to certain "admissions against interest" assertedly made by the defendant. As to the first of these, the testimony of Tony that the defendant told him, "Tell them at no time I gave that to you," there is no question but that such evidence was properly admitted.

Officer Huber testified to a conversation with the defendant after his arrest, as follows:

"I asked if he knew anything about the yellow capsules that were recovered by Inspector Dowdy from Tony . . . and he said that he had not sold them. I asked him if he had seen the paper sacks that were picked up by Inspector Dowdy and Deputy Sheriff Johnston at his drug store, and he said he had not seen these paper sacks before, or any that looked like them. . . . And I said what do you want to call your wife for, and he said, I want to tell her to get hold of the Brunswick Drug Company and have them send over to me or tell them to get in touch with the person who acted as relief pharmacist. I asked him where his wife was at that time and he said she was at home, and I told him he might use the phone and he dialed

some number and talked with somebody on the phone and told them what I have just related."

Officer Johnston testified that while in the drug store he asked the defendant "if he had made a sale of merchandise that the Inspector showed him and he said that he had not."

 Officer Dowdy testified that upon entering the store, "I asked him if he was a licensed pharmacist in charge of the store and he said he was. I then asked him if he had another registered pharmacist working in the store at the present time and he said that he did not but on rare occasions he had a registered pharmacist come in. . . . [At the sheriff's office.] I showed the defendant that bag containing the five yellow capsules and I asked him if he had sold that material to Tony . . . and the defendant said he did not. I then asked the defendant if he had ever seen this bag before and he said no." The only objection to officer Dowdy's testimony was the request, "I ask that that be stricken," after the witness had described the entry into the drug store and related the conversation above quoted. It cannot be said that the testimony unduly prejudiced the defendant, as it appeared clearly therefrom that he at all times denied his guilt.

Appellant attacks the instructions given by the court. A reading of them discloses that the jury were fully and fairly instructed as to the law applicable to the case. We are, however, in accord with appellant's contention that since the prosecution resorted to the testimony of expert witnesses to establish the fact that the capsules in question contained a derivative of barbital, it was the duty of the court to give an instruction in accordance with the provisions of section 1127b of the Penal Code, whether or not the defendant requested such an instruction. The statute in question makes it the imperative duty of the court to give such instruction irrespective of the action of the defendant in relation thereto. The simple fact that the defendant remained silent does not amount to a waiver on his part of the necessity of giving such an instruction. We are convinced that it was error to fail to give the statutory instruction as to expert witnesses. The court, however, did give an instruction as to the jurors' being the sole and exclusive judges of the effect of evidence and the credibility of witnesses. There was before the jury evidence that the capsules in question were delivered to the minors by the defendant and that marked money used in their purchase was found in the possession of defendant. There were other

incriminating facts in evidence, none of which the defendant denied. After examining the entire cause, including the evidence, we cannot see how a different verdict could have been rendered if the omitted instruction had been given. Section 4½ of article VI of our state Constitution deprives us of the power to set aside a judgment unless we shall be of the opinion that the error complained of has resulted in a miscarriage of justice. In the instant case we cannot see wherein the court's omission to give the required statutory instruction resulted in any miscarriage of justice. Therefore we are without power to order a reversal of the judgment. (*People* v. *Williamson*, 134 Cal.App. 775, 780, 781, 782 [26 P.2d 681]; *People* v. *Sheridan*, 136 Cal.App. 675, 686 [29 P.2d 464]; *People* v. *Fellows*, 139 Cal.App. 337, 342 [34 P.2d 177]; *People* v. *Moore*, 70 Cal.App.2d 158, 165 [160 P.2d 857].)

█ Prejudicial error is also predicated upon the asking of leading questions by the district attorney, the permitting of testimony in narrative form, ''permitting prosecution witnesses to answer questions before the counsel for defense had time to object,'' and alleged misconduct of the district attorney during the trial and in his argument to the jury. To set forth herein the portions of the proceedings upon which these claims are based would unduly prolong this opinion. Suffice it to say that a careful review of the transcript of the testimony and the instructions given convinces this court that these claims of prejudicial error are without merit. The trial court did not abuse its discretion in the conduct of the trial; the jury were clearly admonished to base their verdict solely upon the evidence adduced, and considering the strength of the prosecution's case and the failure of the defendant to explain any of the incriminating circumstances presented against him, it cannot be said that any other verdict might have ensued had the alleged errors not occurred.

The judgment and the order denying defendant's motion for a new trial are, and each is, affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied April 5, 1946, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1946.