[Crim. No. 4438. First Dist., Div. One. Sept. 11, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM O. BOWENS, Defendant and Appellant.

---

Ronald M. Sohigian, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and John F. Kraetzer, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, J.—On this appeal from a judgment of conviction for possession of heroin (violation of Health & Saf. Code, § 11500), the main question presented is whether defendant has been denied his constitutional right to have the jury determine every material issue presented by the evidence. The determination of this question turns upon the giving of an instruction which omitted to state than an essential element of the crime charged was knowledge of the narcotic nature or character of the object possessed. The instruction given was in conformity to CALJIC Instruction No. 703 and reads as follows: ''Within the meaning of the law, a person is in possession of a narcotic when he knowingly has the narcotic

under his dominion and control, and to his knowledge, it is either carried on his person or is in his presence and custody, or if not on his person or in his presence, the possession thereof is immediate, accessible, and exclusive to him."[1] We have concluded that, although this instruction failed to instruct on the essential element of knowledge of the nature or character of the object possessed, such error, under the circumstances of this case, was not prejudicial but can be cured by invoking article VI, section 4½, of the California Constitution.[2]

The salient facts of the instant case, as disclosed by the record, are as follows: On March 15, 1963, Police Officers Hilliard and Schwedhelm, members of the narcotics detail, were cruising in an unmarked police car when they observed defendant, who was known to Hilliard, walking along the street. As the car drew abreast defendant the latter was observed to move his left hand behind him. Hilliard asked defendant if he could look at his arms. Defendant replied in the affirmative, removed his coat, rolled up the sleeves of the sweater he was wearing, and exposed both of his arms. Hilliard observed fresh scars on the inside of the arms which, on examination, he testified were fresh puncture marks caused, in his opinion, by the injection of a narcotic. While Hilliard was examining defendant's arms, Schwedhelm searched the

---

[1]It should be here noted that in the 1962 Supplement to CALJIC the authors have added Instruction No. 703-A, entitled "Concerning Knowledge in the Illegal Possession of Narcotics," which reads as follows: "To constitute the illegal possession of a narcotic, the acts of dominion and control must be accompanied by knowledge on the part of the accused of (1) the presence of the narcotic object, and (2) of its narcotic nature. Unless such knowledge exists, the crime of illegal possession of a narcotic is not committed. The knowledge required by law may be shown by circumstantial evidence; it is manifested by the circumstances attending the possession, the manner in which it is exercised, the means used, and the sound mind and discretion of the person committing the act."

[2]This section reads: "No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." In *People* v. *Watson*, 46 Cal.2d 818, 836, the applicable test within the meaning of this constitutional provision, is stated as follows: "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."

594

sidewalk area where defendant had been observed making the hand movement aforesaid. In his search he discovered a white paper packet which he recognized as a "small bindle, paper of heroin" which he then showed to Hilliard. Defendant was thereupon taken into custody and brought to vice control headquarters where he was placed in a holding cell. Upon request, defendant removed his coat and sweater, whereupon a white piece of paper, similar to that found on the sidewalk earlier, fell from his sweater. Each of these paper packets contained a powdery substance which was subsequently determined to be heroin.[3] Officer Leen testified that on March 16, 1963 defendant refused to take a Nalline test; that defendant had three puncture marks on his right inner elbow and five on the left inner elbow; that defendant told him he was sick, which Leen interpreted to mean that defendant was experiencing withdrawal symptoms. A physician, experienced in the field of narcotics, testified that he spoke to defendant on March 16, 1963; that defendant bore numerous new marks on his arms; and that defendant stated he wanted some morphine sulphate, which is a drug used to ease withdrawal symptoms. He further stated that in his opinion defendant was then under the influence of narcotics. Defendant testified in his own behalf. He denied having thrown anything on the sidewalk, and denied that the package found on the sidewalk was his. He did not deny, however, that the packet which fell from his sweater in the holding cell was his.

▉ It is well established that in a prosecution for unlawful possession of narcotics the People must prove the accused exercised dominion and control over the drug with knowledge of its presence and narcotic character. (*People* v. *Redrick*, 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Melendez*, 225 Cal.App.2d 67, 70 [37 Cal.Rptr. 126]; *People* v. *Winston*, 46 Cal.2d 151, 160-161 [293 P.2d 40]; *People* v. *Gory*, 28 Cal.2d 450, 454 [170 P.2d 433]; *People* v. *Tabizon*, 166 Cal.App.2d 271, 273 [332 P.2d 697].) Accordingly, the crime of possession of narcotics requires a physical or constructive possession with actual knowledge of the presence of the narcotic substance and knowledge of the narcotic character of the article possessed. (*People* v. *Melendez*, *supra*, at p. 70; *People* v. *Winston*, *supra*, at pp. 160-161; *People* v. *Gory*, *supra*, at p. 456.)▉ It is also a fundamental principle that it is the duty of the trial court in a criminal case

---

[3]It was stipulated by defendant's counsel that the substance contained in the two packets was heroin.

to give, of its own motion, instructions on the general principles of law governing the case, even though not requested by the parties; however, it is not the court's duty to give instructions upon specific points developed through the evidence introduced at trial, unless such instructions are requested by the party desiring them.[4] (*People* v. *Warren*, 16 Cal.2d 103, 116-117 [104 P.2d 1024] ; *People* v. *Putnam*, 20 Cal.2d 885, 890 [129 P.2d 367] ; *People* v. *Wade*, 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116].) " 'The most rational interpretation of the phrase "general principles of law governing the case" would seem to be as those principles of law commonly or closely and openly connected with the facts of the case before the court.' " (*People* v. *Bevins*, 54 Cal.2d 71, 77 [4 Cal.Rptr. 504, 351 P.2d 776] ; *People* v. *Wade*, *supra*, at p. 334; *People* v. *Atwood*, 223 Cal.App.2d 316, 332 [35 Cal.Rptr. 831].) As one of the essential elements of possession of narcotics is the knowledge of the narcotic character of the substance possessed, it follows that it was the trial court's duty in the case at bench to so instruct the jury even without a request therefor by defendant. The failure to so instruct is error. (*People* v. *Winston*, *supra*, at p. 161; *People* v. *Candiotto*, 128 Cal.App.2d 347, 354-355 [275 P.2d 500] ; *People* v. *Perez*, 128 Cal.App.2d 750, 759 [276 P.2d 72] ; *People* v. *Taylor*, 159 Cal.App.2d 752, 759 [324 P.2d 715] ; see *People* v. *Simpson*, 170 Cal.App.2d 524, 532-533 [339 P.2d 156].)

In *Winston*, *Taylor*, *Perez* and *Candiotto*, it was held that although it was error to fail to instruct on the element of the knowledge of the narcotic character of the object, the error was not prejudicial under the circumstances of the case in the light of article VI, section 4½, of the California Constitution. In each of these cases it was held that, notwithstanding the failure to so instruct, the evidence before the jury was such that there could be no doubt that the defendant knew that the material in his possession was a narcotic,[5] and that, therefore, it was not reasonably probable that a result more favorable to the defendant would have been reached if the court had given the subject instruction.[6] The People rely

[4]Defendant did not propose or request any instructions in the present case.

[5]In *Candiotto*, *Perez* and *Taylor* the defendant testified that he knew the nature of the narcotic involved.

[6]In *Candiotto* and *Perez* the trial court gave CALJIC Instruction No. 703. The reviewing court noted that this instruction does not tell the jury the defendant must know the object he possesses is a narcotic.

upon *People* v. *Brajevich,* 174 Cal.App.2d 438 [344 P.2d 815], as authority that CALJIC Instruction No. 703 properly advises the jury that knowledge of the narcotic character of the object possessed is an essential element of the crime of possessing narcotics. This case is advanced by the People as holding that the language "knowingly has the narcotic under his dominion and control" connotes the concept of knowledge of the nature or character of the article possessed. This is not the holding of *Brajevich.* A reading of the opinion in that case discloses that CALJIC Instruction No. 703 was *one* of the instructions given on the subject of possession and knowledge. While the other instructions on the subject were not set out verbatim in the opinion there is a strong indication that these instructions covered the subject of knowledge of the narcotic character of the substance involved. On page 446 we find the following language: "[T]he court fully and correctly instructed the jury of the necessity for evidence that the defendant *knew of* and exercised control over the narcotics found in his automobile; . . ." (Italics added.)

The fact of knowledge may be proved circumstantially, and it may be inferred from other facts. (*People* v. *Mateo,* 171 Cal.App.2d 850, 855 [341 P.2d 768]; *People* v. *Magdaleno,* 158 Cal.App.2d 48, 51 [322 P.2d 89]; *People* v. *Flores,* 155 Cal.App.2d 347, 349 [318 P.2d 65]; *People* v. *Blinks,* 158 Cal.App.2d 264, 267 [322 P.2d 466].) In the present case there was ample evidence from which the jury could infer that defendant had knowledge of the narcotic character of the objects which he possessed. Defendant, after looking in the direction of the officers, made a deliberate, furtive motion with his left hand behind him and away from the officers. One of the officers found a bindle of heroin in the area where defendant made his motion. During a search of defendant another bindle of heroin fell from his sweater. Defendant's arms bore numerous fresh scabs and needle marks which were described as having been caused by the injection of a narcotic. A doctor testified that when he examined defendant on the day after his arrest, he was under the influence of narcotics and asked for morphine sulphate, a drug used to ease the withdrawal symptoms suffered by a narcotic user. Another police witness also testified that on the day after his arrest defendant was experiencing withdrawal symptoms. There can be no doubt from this evidence that defendant knew what a narcotic was. Accordingly, it cannot be said from an examination of the entire cause, including

the evidence, that it is reasonably probable a result more favorable to defendant would have been reached in the absence of the error. (Cal. Const., art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

It is urged by defendant that a reversal is required because he has the constitutional right to have the jury determine every material issue presented by the evidence, and that irrespective of the strong evidence tending to establish his guilt the denial of such a fundamental right cannot be cured by article VI, section 4½, of the California Constitution. In *People* v. *Ford,* 60 Cal.2d 772 [36 Cal.Rptr. 620, 388 P.2d 892], the defendant argued that the lower court erred in failing to give on its own motion an instruction that conviction of the crime of robbery required proof of a specific intent to steal. The Supreme Court held that because one of the essential elements of the crime is a specific intent to steal, it was the trial court's duty to so instruct the jury even without a request therefor by defendant. The reviewing court, invoking California Constitution article VI, section 4½, held, however, that the error was not there prejudicial because the robbery victim's testimony as to the circumstances of the robbery, believed by the jury, permitted no other interpretation than that defendant entertained a specific intent to steal when he demanded the victim's money at gunpoint. The rationale of *Ford* is that where the evidence permits of no other interpretation of the defendant's conduct, the failure to give a further instruction on specific intent is not prejudicial. (In accord: *People* v. *Stone,* 213 Cal.App.2d 260, 263-264 [28 Cal.Rptr. 522]; *People* v. *Seay,* 179 Cal.App.2d 362, 363 [3 Cal.Rptr. 769]; *People* v. *Butcher,* 174 Cal.App.2d 722, 731-732 [345 P.2d 127].) Juxtaposed with *Ford* is *People* v. *Longino,* 222 Cal.App.2d 734 [35 Cal.Rptr. 367], where the lower court failed to instruct that a specific intent to sell a narcotic is an essential element of the crime of offering to make such a sale. The appellate court examined the entire cause, including the evidence, and held that the failure to so instruct was prejudicial because under the correct instructions a different verdict would not have been improbable. (In accord: *People* v. *Jackson,* 59 Cal.2d 468, 469-470 [30 Cal.Rptr. 329, 381 P.2d 1].) It should be here noted that while *Longino* reached a different result than that in *Ford,* the former also took cognizance that article VI, section 4½, of the California Constitution is applicable where a trial court fails to instruct on the essential element of specific intent.

Of particular interest is *People* v. *Modesto,* 59 Cal.2d 722 [31 Cal.Rptr. 225, 382 P.2d 33], which involved a conviction of first degree murder, the penalty being fixed at death. The record contained evidence of manslaughter, but the trial court refused to give defendant's requested instruction on that issue. The Supreme Court held that the error was reversible per se, stating as follows: ''Reversal is not required because of a reasonable probability that in the absence of the error the jury would have reached a different verdict [citation], but because the defendant has a constitutional right to have the jury determine every material issue presented by the evidence. Regardless of how overwhelming the evidence of guilt may be, the denial of such a fundamental right cannot be cured by article VI, section 4½, of the California Constitution, for the denial of such a right itself is a miscarriage of justice within the meaning of that provision. [Citations.]'' (P. 730.) In view of the principle declared in *Modesto* we must acknowledge that we have difficulty reconciling it with the other cases we have hereinabove discussed. At first blush it would appear *Modesto* holds that whenever a trial court fails to instruct on an element which constitutes an essential ingredient of the offense charged it amounts to a denial of a fundamental constitutional right which cannot be cured by article VI, section 4½, of the California Constitution, regardless of how overwhelming the evidence of guilt may be. Upon closer scrutiny, it is apparent that the conclusion reached by *Modesto* was compelled by the particular issues involved in the charge of murder, a capital offense, and the inherent deprivation of a fundamental right of a defendant to have a jury convict him of a lesser and included offense when a trial court refuses a manslaughter instruction. *Modesto* relies upon the inflexible rule declared in *People* v. *Carmen,* 36 Cal.2d 768 [228 P.2d 281], that it is reversible error to refuse a manslaughter instruction when there is any evidence that would warrant a conviction of manslaughter. The rationale of *Modesto* and *Carmen,* as we apprehend it, is that a defendant's right in a murder case to a manslaughter instruction, when there is evidence thereof, precludes not only the weighing of the evidence by a reviewing court under the subject constitutional provision to determine the likelihood that a properly instructed jury would have found manslaughter, but also the attempt by the appellate court to determine how the failure to present the issue of manslaughter to the jury may or may not have influenced its choice between first and second degree murder.

In the present case we are not concerned with a capital offense, or with a crime which is divided into degrees, nor with a situation wherein the jury could have found defendant guilty of a lesser and included offense. The crime here charged is possession of narcotics, an essential element of which is knowledge of the narcotic character of the thing possessed. While the jury was not told that such an element was an ingredient of the crime charged, it was so palpably before the jury that, even if the jury had been so instructed, it is not reasonably probable that a result more favorable to defendant would have been reached. ■ We are constrained to hold, therefore, that the failure to instruct a jury that knowledge of the narcotic character of the article possessed, in a charge of possessing narcotics, does not per se amount to a deprivation of a constitutional right, but that such error, dependent upon the particular circumstances of the case, may be cured by invoking article VI, section 4½, of the California Constitution. We are persuaded in our conclusion, moreover, by the fact that *Candiotto, Perez, Taylor* and *Winston* have not been expressly overruled by *Modesto* or by any other subsequent Supreme Court case,[7] and, more particularly, by the significant fact that *Ford*, which was decided after *Modesto* and *Carmen*, did not deem it necessary to its decision to either discuss or distinguish these last mentioned cases.

Defendant also complains that the trial court did not instruct the jury on the weight to be given expert testimony. Preliminarily, it should be here noted that insofar as the proof of the narcotic nature of the evidence found is concerned, it was stipulated between counsel that the substance found was heroin. The prosecution resorted to the testimony of expert witnesses to establish the fact that defendant was a user of narcotics and that at the time of his arrest he was under the influence of narcotics. ■ It is well-settled that when the prosecution relies upon expert testimony, it is the court's duty to instruct the jury that a duly qualified expert may give his opinion on a question in controversy; that in deciding such question the jury may consider the opinion with the reasons stated therefor; that the jury is not bound to accept the opinion of an expert as conclusive, but should give the opinion the weight to which the jury finds it is entitled; and that the jury may disregard such opinion if it finds it is unreasonable. (*People* v. *DeMordaigle*, 138 Cal.

[7]These cases are not mentioned in *Modesto*.

App.2d 435, 440 [292 P.2d 3]; *People* v. *Woods,* 19 Cal.App. 2d 556, 561 [65 P.2d 940]; Pen. Code, § 1127b.) It is the court's duty to give such an instruction, whether or not the defendant requested it. (*People* v. *DeWitt,* 98 Cal.App.2d 709, 718 [220 P.2d 981]; *People* v. *Brac,* 73 Cal.App.2d 629, 639 [167 P.2d 535]; *People* v. *Williamson,* 134 Cal.App. 775, 780-781 [26 P.2d 681].) No such instruction was given in the present case, although the trial judge did instruct the jurors that they were the sole and exclusive judges of the effect and value of the evidence and the credibility of witnesses.

It is also the rule, however, that the erroneous failure to instruct the jury regarding the weight of expert testimony is not prejudicial unless the reviewing court, upon an examination of the entire cause, determines that the jury might have rendered a different verdict had the omitted instruction been given. (*People* v. *Williamson, supra,* at p. 782; *People* v. *DeWitt, supra,* at p. 718; *People* v. *Moore,* 70 Cal.App.2d 158, 165 [160 P.2d 857]; *People* v. *Morris,* 110 Cal.App.2d 469, 478 [243 P.2d 66]; *People* v. *Brac, supra,* at pp. 639-640; *People* v. *Agajanian,* 97 Cal.App.2d 399, 402 [218 P.2d 114].)

After examining the entire cause, including the evidence, we are unable to perceive how a different verdict could have been rendered if the omitted instruction had been given. By its verdict the jury decided that defendant was in knowing possession of the two bindles of heroin introduced into evidence. Since counsel for defendant stipulated that the substance contained in the bindles was heroin, there can be no question that defendant was in possession of a narcotic. This evidence, together with defendant's furtive motion with his left hand, the discovery of the heroin on the sidewalk where he made the motion, and defendant's request for morphine sulphate, is sufficient to warrant the jury's inference that defendant knew the narcotic character of the material he possessed. This inference is of sufficient strength so that a different verdict is not reasonably probable. The expert testimony consisted of circumstantial evidence indicating that defendant had used narcotics at or about the time of his arrest. It is certainly a reasonable assumption that had the instruction been given, the jury would not have totally disregarded this testimony because there was nothing improbable or questionable about the evidence or the manner in which it was given.[8] Moreover, there is no positive showing of prejudice. We are of the

---

[8]No objections were interposed by defendant to the testimony given by the expert witnesses.

opinion, therefore, that under the circumstances of the case it is not reasonably probable that a result more favorable to defendant would have been reached if the subject instruction had been given. (Cal. Const., *supra*; *People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

Defendant contends, finally, that it is a violation of the Fourteenth Amendment for a state to punish a person for possession of narcotics in an amount sufficient to satisfy the individual's need from addiction to narcotics, citing *Robinson* v. *California,* 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed.2d 758]. *Robinson* involved the constitutionality of a California statute that made it a misdemeanor for a person to " 'be addicted to the use of narcotics.' " (P. 660.) As a preface to its holding, the Supreme Court declared as follows: "The broad power of a State to regulate the narcotic drugs traffic within its borders is not here in issue." (P. 664.) Narrowing the scope of the issue, the Supreme Court further remarked: "This statute . . . is not one which punishes a person for the use of narcotics, for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their administration." (P. 666.) *Robinson* held that the constitutional ban against cruel and unusual punishment was violated by the state statute that makes drug addiction a criminally indictable status. Nowhere in *Robinson* is it held that a state cannot punish a person for the possession of narcotics, whether compulsive or voluntary. A reading of *Robinson* clearly shows that the court refused to punish an affliction or disease, nothing more. Defendant's argument has already been considered in *People* v. *Zapata,* 220 Cal.App.2d 903 [34 Cal.Rptr. 171], where it was stated: "We neither expand nor limit *Robinson*; we simply follow it. By imprisoning Zapata for possession, the state is penalizing his act, not his craving. Public policy considerations may call for a different approach. The constitutional ban on cruel and unusual punishment does not." (P. 907.)

The judgment is affirmed.

Bray, P. J., and Sullivan, J., concurred.

A petition for a rehearing was denied October 5, 1964, and appellant's petition for a hearing by the Supreme Court was denied November 10, 1964. Mosk, J., did not participate therein. Peters, J., was of the opinion that the petition should be granted.