[Crim. No. 5427. Second Dist., Div. Three. Jan. 11, 1956.]

THE PEOPLE, Respondent, v. RUDOLPHE LAM-PRECHT DeMORDAIGLE, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was charged in Counts I, II, III and IV with forgery of checks, and in Counts V, VI and VII with forgery of fictitious name on checks. In a trial by jury he was found guilty as to the first six counts and not guilty as to Count VII. He appeals from the

''judgment'' and ''order'' denying his motion for a new trial. (There were two judgments, and two orders denying motion for new trial.)

Appellant contends that the evidence is insufficient; that rulings as to admissibility of evidence were erroneous; and that certain instructions requested by appellant were improperly refused.

The checks, referred to in the counts upon which defendant was convicted, were drawn on the Pacific Palisades branch of the Security-First National Bank. Some of the checks were payable to the Mayfair Market, and some of them were payable to ''cash.'' They were presented to and cashed by persons who were ''checkers'' (at the cash registers) in the Mayfair Market in Pacific Palisades, except that one of the checks was presented to and cashed by a clerk in the liquor department of the market. ▇ No purported signature, appearing on any of those checks as the signature of the drawer, was written or authorized by such alleged drawer. None of the writing on any of the checks was the writing of the alleged drawer; and none of the writing was authorized by any alleged drawer.

Miss Mason, who cashed a check for $50 (Exhibit 1) on March 26, 1954, testified that she did not remember who presented the check to her; and that she had seen defendant in the market several times prior to the date she cashed the check.

Mrs. LeBasseur, who cashed two checks (Exhibits 2 and 3) for $60 and $90 on March 26 and February 27, 1954, testified on direct examination that she did not remember the identity of the individual who presented the checks to her. On cross-examination she testified that she could not say that defendant was the man who presented the checks. On redirect examination she testified that defendant was not the man, ''as I recall, who gave me those checks.''

Miss Roberts, who cashed a check for $80 (Exhibit 4) on April 2, 1954, testified that she had no recollection of the person who presented the check; and that she did not remember whether she had seen defendant prior to the date she cashed the check.

On April 4, 1954, a check for $35 (Exhibit 5) was presented to a clerk in the liquor department of the market, and the clerk presented the check to the manager of the department who approved it for cashing. The manager testified that he saw the customer who presented the check to the clerk but he could not identify him.

Mrs. Flesia, who cashed a check for $50 (Exhibit 6) on May 15, 1954, testified that defendant was the person who presented the check to her; he presented it in payment for groceries; she gave him (in cash) the difference between the cost of the groceries and the amount of the check; defendant then went to the liquor department; the assistant manager told the witness to watch defendant so that she would be able to identify him; she watched defendant about five minutes and "there is no doubt" in her mind that he is the person who presented the check to her. She testified further that she put the check in the drawer (of the cash register); and that she had seen defendant in the market many times prior to the date he presented the check to her.

Mr. McRobert, who was the assistant manager of the market on May 15 when Exhibit 6 was cashed, testified that on that date he saw defendant shopping in the market and he (witness) watched defendant; he saw him go to Mrs. Flesia's "checkstand" and present the check (Exhibit 6); after deducting the cost of the groceries she gave defendant the balance of the amount of the check in cash; at that time he (witness) was standing by the side of the checkstand and about four feet from defendant, who was dressed in blue pants and green sport shirt; when defendant went to the liquor department, the witness immediately took the check (which defendant had given Mrs. Flesia) out of the cash drawer, showed it to Mrs. Flesia, and asked her to identify the check with the man who just gave it to her; the witness observed the check and then put it back in the drawer; he can identify Exhibit 6 as the check which defendant presented to Mrs. Flesia by the fact that it is for $50, dated May 15, 1954, and has the "O.K." of the manager thereon which consists of the manager's initials in red ink; he also remembered that the check was payable to cash; on that day he (witness) reported the matter to the manager of the market.

Two witnesses, called by the People as handwriting experts, testified regarding their qualifications to give opinions as handwriting experts. Such testimony was sufficient to justify a finding that they were qualified to give such opinions. They testified that they had examined exemplars of defendant's handwriting (Exhibits 8 to 17 inclusive) and had compared them with the checks (Exhibits 1 to 6 inclusive). One of those witnesses testified that in his opinion the writing, including the maker's name, on the face of the Exhibits 1, 2, 4 and 5 was made by the same person who wrote the exemplars; he

could not give an unqualified opinion as to the writing on Exhibits 3 and 6—that "in all probability" the writing and maker's name on Exhibit 3 were written by the same person who wrote the exemplars; he believes that the person responsible for the writing and maker's name on Exhibit 6 is the same person who wrote the exemplars. The other witness testified that in his opinion the writing on the face of Exhibits 1, 2, 3, 4 and 5 was written by the same person who wrote the exemplars; the writing on the face of Exhibit 6 "could have been" by the same person who wrote the exemplars—it is his best judgment that it was; in his opinion the endorsement written on the reverse side of Exhibit 6 was written by the same person who wrote the exemplars.

Defendant testified that he is an electrical engineer and manufacturer; he, his wife and two children have lived in Pacific Palisades since 1944; he traded at the Mayfair Market and he went there about once each week; he knew the manager and the assistant manager of the market; he did not write or pass any of the checks; he never had any checks of the Pacific Palisades branch of the Security-First National Bank; he thought he had cashed some checks in the Mayfair Market— they were company checks which he received in connection with his employment; they were made out in his name and countersigned by two persons; he does not have a green sport shirt.

Appellant's contention that the evidence was insufficient to support the verdicts is without merit. As above shown, there was testimony of the two witnesses who qualified as handwriting experts to the effect that in their opinions the handwriting on the face of the checks involved in Counts I, II, IV and V was the handwriting of defendant. One of those witnesses testified that in his opinion the handwriting on the face of the check involved in Count III was also the handwriting of defendant. As to the check in Count VI, the checker testified that the defendant was the person who presented the check to her; that pursuant to request of the assistant manager she watched defendant so that she could identify him. The assistant manager testified that he saw the defendant present the check (involved in Count VI) to the checker; he (witness) immediately asked the checker to identify the check with the man who gave it to her. A handwriting expert testified that the endorsement on that check was in the handwriting of defendant. The name appearing

on the check as the purported drawer was W. H. Montgomery. The evidence was sufficient to support the judgments.

Appellant contends further that the court erred in permitting the witnesses, who testified regarding handwriting, to state their opinions as to whether the writing on the checks was written by the same person who wrote the exemplars (Exhibits 8 to 17 inclusive). Appellant argues that those witnesses, in stating such opinions, invaded the province of the jury to decide the ultimate questions of fact; and that the constant overruling of appellant's objections ''that the conclusion given by the expert invaded the province of the jury'' necessarily led the jury to believe that it must accept that conclusion. The opinion of a witness respecting the handwriting of a person may be given upon a trial if the witness, by reason of his education, study and experience, is qualified as an expert in the art of handwriting. (See Code Civ. Proc., § 1870, subd. 9.) As above stated, the two witnesses herein, who testified respecting the handwriting on the checks, were qualified to give opinions as handwriting experts. The ruling of the court permitting them to give their opinions respecting the handwriting was correct. The court properly instructed the jury to the effect that a duly qualified expert may give his opinion on a question in controversy; that in deciding such question the jury may consider the opinion with the reasons stated therefor; that the jury is not bound to accept the opinion of an expert as conclusive, but should give the opinion the weight to which the jury finds it is entitled; and that the jury may disregard such opinion if it finds it is unreasonable. When the opinion of an expert witness is received in evidence in the trial of a criminal case, it is the duty of the court to give an instruction such as the one last above referred to herein. (See Pen. Code, § 1127b; and *People* v. *Woods*, 19 Cal.App.2d 556 [65 P.2d 940].) In the case just cited (*People* v. *Woods*) the court quoted such an instruction, and then said (p. 561): ''Thus in such instances the trial court does not empower the expert witness to decide any fact, nor is the jury bound to accept the expert's assertions, and the province of the jury is not invaded.'' The further argument of appellant's counsel, to the effect that the constant overruling of his objections to the conclusions of the expert led the jury to believe that it must accept that conclusion, has no merit. The effect of his argument seems to be that even though the court ruled correctly each time counsel for appellant objected, the repeti-

tion of the correct ruling, made in response to said counsel's improper objection, constituted error in that it emphasized the law that the opinion of the witness was admissible. Counsel for appellant chose to "constantly" object and thereby invite such constant overruling of his objection. Of course, there was no error on the part of the court.

The court refused to give appellant's requested instruction to the effect that the defendant may rely on evidence brought out on cross-examination of other witnesses or brought out on redirect examination for his defense. There was no error. There were various instructions to the effect that the jury should consider all the evidence. Particularly, the instruction as to reasonable doubt included the words "after the entire comparison and consideration of all the evidence."

The court refused to give appellant's requested instruction to the effect that a defendant may rely on the weakness of the prosecution's case. There was no error. That instruction was covered by instructions, which were given, to the effect that the burden of proof was on the prosecution.

Another refused instruction, requested by appellant, was to the effect that if weaker evidence is offered when stronger evidence is within the power of the party, the evidence offered should be viewed with distrust. Appellant argues that this instruction was relevant because the prosecution failed to produce any witness who identified the defendant (1) as the person who wrote the checks, or (2) as the person who passed the checks—"except one doubtful witness." There was no evidence that it was within the power of the prosecution to present stronger evidence. The requested instruction was not applicable under the evidence herein.

Another refused instruction, requested by appellant, was to the effect that the defendant's testimony is entitled to the same weight and consideration as that of any other witness, and is to be judged by the same standards as are applicable to all witnesses. The first part of the requested instruction was not proper. The court could not declare as a matter of law that defendant's testimony was entitled to the same weight as the testimony of any other witness. The remainder of the instruction (that defendant's testimony is to be judged by the same standards applicable to other witnesses) was covered by a given instruction to the effect that the jury is the exclusive judge of the value of the evidence and the credibility of the witnesses; and that the term "wit-

ness'' includes every person whose testimony has been received.

 Appellant also asserts that the court erred in refusing to give his requested instruction to the effect that ''lack of possession'' by defendant of checks or of a pen ''are circumstances'' which the jury had a right to take into consideration. Appellant argues to the effect that the instruction should have been given because there was evidence that he did not have checks or a pen at the time of his arrest. The instruction was properly refused. It amounted only to an argument in favor of defendant.

 Appellant also asserts that the court erred in refusing to give his requested instruction to the effect that a party who produces a witness is bound by the testimony of that witness; and that the prosecution is bound by the testimony of its witness Mrs. LeBasseur and that the jury must accept it as correct. Mrs. LeBasseur, referred to in the instruction, testified (1) that she did not remember the individual who presented the checks (Exhibits 2 and 3) to her; (2) that she could not say that defendant was the man; and (3) that he was not the man, ''as I recall.'' Apparently, the appellant considers that her testimony should be regarded as meaning that she knew that defendant was not the man who presented the checks. Her statement that he was not the man was qualified by the words ''as I recall.'' She had previously said, ''I do not remember'' the man; and ''I can't say that he was the man.'' The jury could have regarded her testimony as meaning that she did not remember the man, or that she did not know that he was the man, or that, according to the way she recalled it, he was not the man. In other words, the jury could have regarded her testimony as meaning that she could not identify the defendant as the man who presented the checks. The requested instruction, which referred specifically to that one witness, would have told the jury that the prosecution was bound by the testimony of that particular witness and must accept it as correct. There was no more reason to give such an instruction pertaining to that one witness, who could not identify the defendant, than there would have been to give such an instruction pertaining to any of the other witnesses who could not identify him, or who could identify him. If it were proper to instruct the jury that it must accept as correct the testimony of that one witness, who could not identify the defendant, it also would have been

proper to instruct the jury that it must accept as correct the testimony of Mrs. Flesia and Mr. McRobert, who did identify the defendant. The requested instruction was properly refused.

The judgments, and the orders denying motion for a new trial, are affirmed.

Shinn, P. J., and Nourse (Paul), J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1956.

*Assigned by Chairman of Judicial Council.