[Crim. No. 6201.   Second Dist., Div. One.   Dec. 23, 1958.]

THE PEOPLE, Respondent, v. JOHN ELTON BULLOCK, Appellant.

John Elton Bullock, in pro. per., and Frank L. Stearns for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County containing five counts, defendant was accused in Count I of the crime of forging a fictitious name (Pen. Code, § 470). The remaining four counts charged separate offenses of issuing a check without sufficient funds (Pen. Code, § 476a).

In Count I, it was charged that defendant wilfully and with intent to defraud John Shrayer and Bank of America, South Whittier Branch, made, passed, uttered and published a fictitious check in the sum of $2,172 on or about April 26, 1957, knowing the check to be fictitious.

In Count II, it was alleged that defendant wilfully and

with intent to defraud Esther Jessup, Thriftimart, and Bank of America, South Whittier Branch, made, drew, uttered and delivered a check in the sum of $50 on or about April 28, 1957, knowing that he had neither funds in nor sufficient credit with the drawee bank to meet the check.

In Count III, it was charged that defendant had committed the same offense on or about May 2, 1957, by making, drawing, uttering and delivering a check in the sum of $50 with intent to defraud Frieda Edgerton, Thriftimart and Bank of America, South Whittier Branch.

In Count IV, it was alleged that defendant had committed the same offense on or about May 6, 1957, by making, drawing, uttering, and delivering a check in the sum of $75 with intent to defraud Joe Brown, Market Basket and Bank of America, South Whittier Branch.

In Count V, it was charged that defendant had committed the same offense on or about May 26, 1957, by making, drawing, uttering, and delivering a check in the sum of $50 with intent to defraud Lois Dafoe, Nixon's Market and Bank of America, South Whittier Branch.

The information also charged three prior felony convictions, two for forgery and one for issuing checks without sufficient funds.

Defendant entered pleas of not guilty as to each count of the information and denied the alleged prior convictions. Trial by jury was duly waived and by stipulation the cause was submitted to the court on the testimony adduced at the preliminary examination, each side reserving the right to offer additional evidence. Defendant did not testify or offer any evidence in his behalf.

Defendant was found guilty on all counts of the information, no finding was made as to the alleged prior convictions, his motion for a new trial was denied, and he was sentenced to state prison. From the judgment of conviction, defendant prosecutes this appeal.

As to the factual background of this prosecution, the record reveals that defendant maintained an account in Bank of America, South Whittier Branch, under the name of Jay Reed Enterprises. On April 26, 1957, he presented a check in the sum of $2,172 for deposit to his account to John Shrayer, an employee of the Bank of America, South Whittier Branch. The check was drawn on the Bank of America, Fresno Main Office, and was dated April 24, 1957. The payee was Jay Reed Enterprises and the signature of the drawer

was "E. G. Griffiths." The check was credited to defendant's account and he subsequently drew four checks against the account: a check for $50 on April 28; a check for $50 on May 2; a check for $75 on May 5; and a check for $50 on May 26. These checks were honored on the dates they bore and were received by the persons named in the information, each of whom gave to defendant the money received for said checks. If the aforesaid check for $2,172, signed "E. G. Griffiths," had been dishonored on the date it was presented, there would not have been funds in defendant's account to meet the subsequent checks.

The check signed "E. G. Griffiths" was dishonored by the Bank of America, Fresno Main Office. There was no account in the name of "E. G. Griffiths" in that bank, nor was there any record concerning such a person. The Fresno bank Main Office had no arrangements for credit with any "E. G. Griffiths" or with the defendant, and the South Whittier Branch had no arrangements for credit to defendant or to Jay Reed Enterprises.

It was stipulated that John Harris, an examiner of questioned documents, "is an expert in the comparison and identification of handwriting." He testified that in his opinion the signature "E. G. Griffiths" appearing on the face of the check for $2,172 (People's Exhibit 1) and the handwriting specimens supplied by defendant were written by the same hand.

Appellant's sole contention on this appeal is that although the witness Harris was called as an expert on handwriting and his qualifications as an expert in the field of comparison and identification of handwriting were stipulated nevertheless, the witness "presented his evidence strictly as a layman" because, says appellant, "There is no evidence of an expert's method of comparison or identification of People's Exhibit 1, the signature 'E G. Griffiths' on the $2172.00 check and People's Exhibit 6, Los Angeles County Sheriff's Department form, the handwriting 'John Elton Bullock' " (defendant). As to the method utilized by Mr. Harris in arriving at his opinion the record reflects the following:

"Q. (By Mr. Umann, counsel for appellant): What type of examination did you make, a visual? A. Well, just normal visual examination.

"Q. Anything more than that? A. No, I made no photographs of it or didn't examine it under a microscope.

"Q. Are there any other types of tests that you could have made? A. Not that would be necessary in this case.

"Q. Now, the visual tests were made without the aid of any magnifying glass or microscope; is that correct? A. That's right."

. . . . . . . . . .

"Q. You did base your opinion on certain factors that you observed; is that right? A. Well, yes, the characteristics of the handwriting.

"Q. Now, did you find any similarities upon which to base this opinion? A. Well, I certainly did or I wouldn't have reached a conclusion that they were both the same handwriting."

It is appellant's contention in effect that a handwriting expert who bases his opinion solely on a visual examination testifies as a layman and the admissibility of his testimony is governed by the provisions of section 1943 of the Code of Civil Procedure—that is, he must have seen the subject write or have seen writing purporting to be his, upon which he has acted or been charged, and has thereby acquired a knowledge of the subject's writing. Appellant cites no authority for this proposition and we are satisfied it is without merit. When, as in the instant case, it was stipulated that the witness Harris, by reason of his education, study and experience was qualified as an expert in the art of handwriting, his testimony respecting the handwriting of appellant was admissible (*People* v. *DeMordaigle*, 138 Cal.App.2d 435, 440 [292 P.2d 3]; Code Civ. Proc., § 1944; Code Civ. Proc., § 1870, subd. 9; 19 Cal.Jur.2d, Evidence, §§ 352, 354). We are satisfied the testimony of Mr. Harris, based as it was on his experience, knowledge and skill in a field in which his competency was stipulated, was clearly admissible. While the particular method adopted by him might go to the weight of his testimony, it clearly does not warrant its rejection. The weight and effect of the opinion of the expert witness, or the results of comparisons of the handwritings, was a matter for the duly constituted arbiter of the facts.

Furthermore, since no timely objection to the introduction of this evidence was made in trial court, the objection thereto, on this appeal, comes too late (*People* v. *Millum*, 42 Cal.2d 524, 528 [267 P.2d 1039]).

Appellant relies upon the cases of *People* v. *Simon*, 107 Cal. App.2d 105, 120, 121 [236 P.2d 855], and *People* v. *Zoffel*, 35 Cal.App.2d 215, 221 [95 P.2d 160], but in these cases, the court was not concerned with testimony given by an expert

witness. *People* v. *Simon, supra,* simply holds that under section 1943 of the Code of Civil Procedure a nonexpert or lay witness may testify as to the identity of handwriting of the purported writer where a proper foundation has been laid showing the knowledge required by the aforesaid section of the Code of Civil Procedure. In the Zoffel case, *supra,* it is held that certain cards bearing the name of the accused were inadmissible because the defendant ". . . was not present when the cards were found, was not proved to have been in the apartment, *and no evidence was offered that they were in her handwriting."* (Emphasis added.) Both cases involve questions and issues not present in the case at bar.

The judgment is affirmed.

Lillie, J., concurred.

FOURT, J.—I concur in the judgment, however, I would direct that the defendant be returned to the superior court, and that the trial court be directed to make the finding required by law as to the prior convictions.

The reporter's transcript discloses the following:

"THE COURT: People vs. John Elton Bullock. You are John Elton Bullock?

"THE DEFENDANT: Yes.

"THE COURT: The Court has read and considered the reporter's transcript of the preliminary examination in this proceeding and has considered People's Exhibit 7 having to do with the alleged priors against the defendant.

"MR. KLEIN: People rest, your Honor.

"MR. UMANN: And the defendant rests, your Honor. The matter is all contained within the transcript. As to the priors, however, I discussed that with the District Attorney. He has no objection in the event the Court is so disposed to permit them to go over depending upon the decision of the Court.

"THE COURT: Is the matter submitted without argument?

"MR. KLEIN: Yes, your Honor.

"THE COURT: The Court finds the defendant guilty on each of the five counts of the Information, guilty as charged.

"MR. UMANN: At this time we request the matter of the priors go over and waive time for sentence, and ask for permission to file a written application for probation.

"THE COURT: Permission will be granted."

(It was stipulated that the person named in the certified copies of the prison records was the defendant in this case.)

On January 6, 1958, the time set for the hearing of a motion for a new trial, and the time set for considering the probation officer's report, and for judgment and sentence, the following occurred:

"THE COURT: Well, *with his past record,* which as you say, is *going back to 1916, but there is forgery, forgery, escape, checks, swindling, checks, wanted checks, forgery, fugitive, wanted checks.* And I would *judge at least thirty aliases* and names which he has gone under, *starting out again under his same old procedure. He doesn't seem to have learned anything, this being a $2,172.00 check.* The probation officer says the defendant was *extremely evasive, fretful, frequently changed his replies.*

"The *Sheriff states that he had checks all over, based on the same fictitious name check; between the time he was let out on bail another check,* seven thirty, dated August 17, 1957.

"When I saw that, I was just disgusted. *The Court just doesn't believe that the defendant is in a position to be helped by any leniency.*

"No legal cause appearing why judgment should not now be pronounced, it is the judgment and sentence of this Court that the defendant be sentenced to State's Prison for the term prescribed by law. The defendant is remanded to the custody of the Sheriff, to be by him delivered to the Director of Corrections, Chino Institution for Men, Chino, California. Probation is denied.

. . . . . . . . . . . .

"THE CLERK: *No finding as to the priors, Judge?*

"MR. UMANN: In view of the time of the priors, we ask that they be stricken in the interests of justice, your Honor.

"THE COURT: *The Court is deliberately making no finding as to the priors in order to give the Adult Authority greater latitude in the handling of the defendant.* (Emphasis added.)

"MR. UMANN: Thank you very much."

Pending the appeal, bail was then reduced from the sum of $3,000 as set and furnished in the first instance, to $2,000.

The certified copies of the former prison records, which were before the judge, were not questioned. They show on their face that the defendant was convicted of forgery of uttering a forged check in Ohio, and that he was sentenced to the state penitentiary and admitted therein on November 25, 1916, and conditionally released March, 1920, and released on

parole July 15, 1926, and granted final release from parole in July, 1936.

In Michigan, on November 10, 1920, he was sentenced to the state prison on being convicted of "forgery and uttering" and served a term in that prison therefor. He then apparently escaped from the Michigan state prison, but was sometime later caught and returned.

In Los Angeles County, in 1932, he was convicted of several counts of forgery and issuing checks without sufficient funds, and was sentenced therefor to the state prison and served a term in Folsom prison. It is interesting to note that in that series of cases the defendant admitted at least one of the then prior convictions. He was released and discharged from parole in 1938.

It is clear that when the Legislature provided for added penalties in cases where the defendant had suffered one or more prior felony convictions, it had in mind, or believed that if a defendant had not benefited by his prior experience and continually displayed a tendency to commit substantially the same offenses over and over again, he should by his subsequent crime or crimes receive a greater punishment or a longer period of incarceration than would be the case of a first offender. This case is such an instance. The judge, first of all, failed to make the finding required by section 1158 of the Penal Code, which reads in part as follows:

"Whenever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the offense with which he is charged, the jury, or the *judge*, if a jury trial is waived, *must unless the answer of the defendant admits such previous convictions, find whether or not he has suffered such previous conviction* . . . ." (Emphasis added.)

It is apparent that no finding was made in this particular instance because to do so would have required a finding that the prior convictions were true. Had they been true, and it is obvious that they are, then the defendant would not have been eligible even to apply for probation, let alone have it granted.

As the matter now stands, the defendant is eligible to be treated as a first offender, and as though he had never before committed a public offense, whereas, if the truth had been found, he would be placed in the category where certain

minimums must be complied with. (Pen. Code, § 3024, subd. (c).)[1]

I am convinced that the rise in the crime rate in this state will never be curbed, or even held at its present level, by following the procedures used and adopted in this case. Furthermore, I can see no reason whatsoever for judges failing to do that which the statutes obviously require—namely, as in this case, finding whether the prior convictions were true or untrue. To do otherwise is to fail to dispose of a substantial element in the case.

[1]'The following shall be the minimum term of sentence and imprisonment in certain cases, notwithstanding any other provisions of this code, or any provision of law specifying a lesser sentence:

''(c) For the person previously convicted of a felony either in this State or elsewhere, but not armed with a deadly weapon at the time of his commission of the offense, or a concealed deadly weapon at the time of his arrest, two years; . . . .''