[Crim. No. 8004. First Dist., Div. Three. Jan. 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE L. LYNCH, Defendant and Appellant.

**604**

**COUNSEL**

Harley C. Hardesty, under appointment by the Court of Appeal, and Hardesty, Lau & Dalziel for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CALDECOTT, J.**—The defendant appeals from a judgment of conviction, following a jury trial, of two counts of forcible rape (Pen. Code, § 261) and one count of kidnaping (Pen. Code, § 207).

Appellant contends he was denied a right to a trial by an impartial jury of his peers in the light of its racial, economic and educational composition. The jurors were selected exclusively from the Alameda County voter registration lists. Appellant argues there was a "non-deliberate" but systematic exclusion of appellant's peers as jurors.

This same contention, as a basis for attacking the jury selection procedure in Alameda County, was recently raised in *People* v. *Newton* (1970) 8 Cal.App.3d 359 [87 Cal.Rptr. 394]. The court, in rejecting this contention, found that the record failed to establish an underrepresentation of black persons on the jury panel. In the light of these facts it cannot be said that an unconstitutional discrimination on racial or economic grounds occurred in the selection of prospective jurors from the Alameda County voter registration lists.

■ Appellant contends that he was improperly charged with kidnaping, and this charge, and the evidence offered in support of it, prejudiced the jury against him. Appellant maintains that as all of the offenses are incidental to the one objective, the appellant may be punished only for the most serious of these (rape) and thus should not have been charged with kidnaping, citing *People* v. *Bynes*, 223 Cal.App.2d 268 [35 Cal.Rptr. 633].

*People* v. *Bynes, supra,* however, held only that the defendant could not be sentenced for both offenses, but it did not proscribe the conviction of both offenses. Penal Code section 654, cited by appellant, prohibited the imposition of double punishment but does not prohibit double conviction. (*In re Wright,* 65 Cal.2d 650 [56 Cal.Rptr. 110, 422 P.2d 998]; *In re Ward,* 64 Cal.2d 672 [51 Cal.Rptr. 272, 414 P.2d 400].) Thus the appellant was properly charged.

Furthermore, the appellant did not suffer double punishment since the execution of the sentence for the kidnaping conviction was stayed pending the service of the rape sentence, with the stay to become permanent upon completion of the sentence. (See *People* v. *McFarland,* 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449] and *People* v. *Niles,* 227 Cal.App.2d 749 [39 Cal.Rptr. 11].)

■ Appellant contends that the trial court abused its discretion in denying his request for a continuance to secure a witness. On the first day

of trial, January 16, 1969, defense counsel represented to the court that he was considering calling Steve Skilios as a witness. At the close of the second day of trial, Friday, January 17, the court advised the jury that the case might be concluded Monday, but "more likely early Tuesday." At approximately noon on Monday, the state rested its case. Following the noon recess, the defense called Raymond Massingill and, when his testimony was completed, the defense requested to be heard on a motion outside the presence of the jury. The motion was in the nature of a request for a continuance to produce two witnesses, Mr. Randolph and Mr. Skilios, to testify in advance of appellant, who himself desired to testify. The court, after hearing argument, denied the request on the basis that the order of producing witnesses did not appear to be of such significance as to warrant a continuance. At the same time, counsel told the court that he had been advised by both witnesses that they would be present at 10 a.m. that morning. He also told the court that Randolph was under subpoena for January 15, but that he had told Randolph not to appear at that time, but rather to stay in contact. Skilios, apparently, was not under subpoena.

Despite the denial of the motion for a continuance, the court granted a recess to allow counsel to make telephone calls. Apparently the calls resulted in the production of Randolph.

Randolph testified, followed by appellant. At 4:30 p.m. court recessed, with appellant still under cross-examination. On Tuesday, January 21, the examination of appellant was concluded. Out of the presence of the jury, counsel told the court that he had unsuccessfully attempted to serve a subpoena on Skilios, who was still not present. Counsel requested a continuance to secure his presence. Although the court denied the request, it did grant a recess. The court stated: "When we started last Thursday the Court was made aware that Mr. Skilios was intended to be called as a witness—we weren't sure, but we had his name at that time—and it became obvious on Friday that the prosecution would complete its case by Monday morning, and further we did recess early Monday morning, about 11:45 as neither of the witnesses—neither Mr. Skilios nor Mr. Randolph were here, that the defense was trying to obtain them. We came in after lunch in chambers and we had another try of about half an hour to forty minutes, and then Mr. Randolph did come; that Mr. Skilios did not come in all afternoon."

During the recess defense counsel was able to obtain telephone contact with Skilios. Defense counsel then advised the court that Skilios indicated that he had just awakened, that he intended to appear, and it would take him approximately one hour to get to court. The court asked if this was the man who said he would be present at yesterday's hearing, and upon

being informed that he was, the court then denied the motion for a continuance.

Penal Code section 1050 provides in part: "No continuance of a criminal trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance." ■ The granting of a continuance is within the discretion of the court, and the decision will not be set aside without a showing of an abuse of discretion. (See *People* v. *Douglas,* 61 Cal.2d 430 [38 Cal.Rptr. 884, 392 P.2d 964]; *People* v. *Carter,* 208 Cal.App.2d 722 [25 Cal.Rptr. 527]; *People* v. *Bronaugh,* 100 Cal.App.2d 220 [223 P.2d 256].) ■ Where a motion for continuance is made for the alleged purpose of securing a witness, a showing of due diligence to secure the presence of the witness is required. (*People* v. *Collins,* 195 Cal. 325 [233 P. 97]; *People* v. *Hanz,* 190 Cal. App.2d 793 [12 Cal.Rptr. 282]; *People* v. *Rios,* 172 Cal.App.2d 623 [342 P.2d 317].)

■ Here no showing of due diligence was made. Thus the denial of the motion for a continuance was not an abuse of discretion. If this were simply the case of counsel requesting a continuance of one hour so that a witness could appear, and the court denying the request, we might well have an abuse of discretion. But here, although counsel stated as early as Thursday, January 16, he desired to call Skilios as a witness, no attempt was made to subpoena him until after the close of the prosecution's case. Counsel was reasonably sure that the People would conclude on Monday, January 20, and yet the witness was not present on this date. When the witness again failed to appear on Tuesday, January 21, and counsel had to telephone him, and this was late in the morning, Skilios had just awakened. Though he said he intended to come to court, based on the witness' condition that morning and his past performance, the judge could certainly draw his own conclusions as to whether or not the witness would ever appear.

Under these circumstances the trial court was not required to grant appellant's motion, and the denial does not constitute a clear and manifest abuse of discretion.

■ Appellant contends the court committed prejudicial error by improperly instructing the jury on the law concerning kidnaping in that the court's instructions to the jury did not state that if the movement was merely incidental to the commission of another crime, the movement could not constitute asportation for the conviction of kidnaping. Appellant contends the limited instruction should have been given, citing *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225] and *Cotton* v. *Superior Court* (1961) 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241].

In *Cotton* the court pointed out that "the only movements that occurred were those natural in a riot or assault. . . . All 'asportation' in the instant case [*Cotton*] would appear to be only incidental to the assault and rioting." The court further stated that "Where the movement is incidental to the alleged assault, Penal Code section 207 should not have application, as the Legislature could not reasonably have intended that such incidental movement be a taking '. . . from one part of the county to another.' " The movements referred to by the court in *Cotton* took place within a farm labor camp. One bracero was chased into the barracks and then ordered out, a second bracero was pushed towards the front gate, and a third "was dragged fifteen feet."

In *Daniels* the court stated: ". . . we conclude that the brief movements which defendants Daniels and Simmons compelled their victims to perform in furtherance of robbery were merely incidental to that crime and did not substantially increase the risk of harm otherwise present. Indeed, when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him—whether it be a residence, as here, or a place of business or other enclosure—his conduct generally will not be deemed to constitute the offense proscribed by section 209. Movement across a room or from one room to another, in short, cannot reasonably be found to be asportation 'into another part of the county.' (Pen. Code, § 207.)"

*Daniels,* in referring to movement "incidental to" the underlying crime, repeatedly emphasized "brief movement." In the first count [in *Daniels*] the movement consisted of getting into an automobile, in the second count a distance of 18 feet within the apartment, in the third count a distance of 5 or 6 feet is the greatest distance mentioned by the court, and in the fourth count "the distance that the parties had covered was about 30 feet." In *Daniels* the Supreme Court pointed out that the old rule " 'It is the fact, not the distance, of forcible removal which constitutes kidnaping in this state,' is no longer to be followed."

The present case may be distinguished from *Daniels* and *Cotton* in that the appellant did not move his victim simply within the confines of a residence or enclosure. The victim was forcibly taken off a public sidewalk, in the downtown area of the city, thrown into an automobile, and driven several miles against her will to a dark, isolated place. According to the appellant's own testimony he transported the victim from 8th Street, in downtown Oakland, across the City of Oakland, apparently through the City of Emeryville, though he did not identify it by name, into the City of Berkeley. This reasonably can be found to be asportation "into another part of the

county," and substantially increased "the risk of harm" that might come to the victim. Thus the movement was not merely incidental to the commission of the rapes, and the court did not err in failing to give the instruction as desired by appellant.

■ Appellant further contends the trial court committed prejudicial error by failing to instruct the jury on the proper weight of the testimony of an expert witness. Dr. Steven Gee testified that he examined the victim on March 24, 1968. Dr. Gee stated that he observed facial abrasions and swelling consistent with one person striking another. He further testified that the victim was treated for shock. Based on hospital records of laboratory reports received into evidence, Dr. Gee said that the victim had engaged in an act of sexual intercourse. On cross-examination, Dr. Gee testified that he could not determine accurately when the abrasions occurred nor that they were made by fingernails. Dr. Gee further testified that he could not determine if the victim had been raped.

Penal Code section 1127b provides: "When, in any criminal trial or proceeding, the opinion of any expert witness is received in evidence, the court shall instruct the jury substantially as follows: Duly qualified experts may give their opinions on questions in controversy at a trial. To assist the jury in deciding such questions, the jury may consider the opinion with the reasons stated therefor, if any, by the expert who gives the opinion. The jury is not bound to accept the opinion of any expert as conclusive, but should give to it the weight to which they shall find it to be entitled. The jury may, however, disregard any such opinion, if it shall be found by them to be unreasonable. No further instruction on the subject of opinion evidence need be given."

Although Penal Code section 1127b is mandatory when the opinion of an expert witness is received in evidence, and the trial court in this case did not give the instruction, prejudicial error did not occur.

Dr. Gee's testimony concerning the physical condition of the victim did not involve expert opinion so was not testimony within the scope of Penal Code section 1127b. (See *People* v. *Morcumb*, 28 Cal.App.2d 465, 468 [82 P.2d 714].) Dr. Gee's testimony as to how the abrasions could have been caused was opinion testimony but not such that prejudicial error could be found if the instruction were not given. Certainly the testimony that the victim had had sexual intercourse is not prejudicial error, since appellant admitted he had had sexual intercourse with her.

Finally, the trial court did instruct the jury that its members were the sole and exclusive judges of the facts and that evidence was to be weighed by

them for that purpose. Further, the court told the jury that its members could weigh the credibility of any witness. In light of these instructions, and in light of the evidence presented at trial, there was no prejudicial error because the trial court did not give the instruction.

■ "It is . . . the rule . . . that the erroneous failure to instruct the jury regarding the weight of expert testimony is not prejudicial unless the reviewing court, upon an examination of the entire cause, determines that the jury might have rendered a different verdict had the omitted instruction been given. [Citations.]" (*People* v. *Bowens,* 229 Cal.App.2d 590, 600 [40 Cal.Rptr. 435]; see also *People* v. *DeMordaigle,* 138 Cal.App.2d 435, 440 [292 P.2d 3]; *People* v. *Morris,* 110 Cal.App.2d 469, 478 [243 P.2d 66]; *People* v. *DeWitt,* 98 Cal.App.2d 709, 718 [220 P.2d 981]; *People* v. *Williamson,* 134 Cal.App. 775, 780-782 [26 P.2d 681].)

Appellant maintains he was denied his constitutional right to a fair trial because of ineffective assistance of counsel. ■ It is well settled that before the judgment of conviction can be reversed on the grounds that trial counsel failed to render effective assistance of counsel, "an extreme case must be disclosed." It must appear that counsel's lack of diligence or competence reduced the trial to a "farce or a sham." (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) In fact, the representation must be "worthless." (See *In re Smiley,* 66 Cal.2d 606, 626 [58 Cal. Rptr. 579, 427 P.2d 179].)

Appellant has raised many arguments to find ineffective assistance of counsel. All of the arguments are without merit and are not supported by the record. In fact the argument that appellant was not brought to trial within 60 days after the filing of the information (Pen. Code, § 1382) is not even based on the complete record. The complete record shows that the delay was actually caused by appellant's own failure to appear in court on two occasions, and his counsel's request for a continuance on a third occasion. When appellant finally did appear and was arraigned, he waived time.

Appellant contends improper questioning conducted by the prosecuting attorney denied him his right to a fair and unprejudiced trial. Appellant cites three cases to uphold his argument of prejudicial error: *People* v. *Purvis,* 56 Cal.2d 93 [13 Cal.Rptr. 801, 362 P.2d 713]; *People* v. *Johnson,* 229 Cal.App.2d 162, 170 [40 Cal.Rptr. 105]; *People* v. *Beal,* 116 Cal.App.2d 475, 478 [254 P.2d 100]. All three cases may be distinguished from the

present case. In the present case the statements, even if error, were not prejudicial and did not affect the outcome of the case.

The judgment is affirmed. The appeal from the order denying motion for a new trial is dismissed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied February 19, 1971, and appellant's petition for a hearing by the Supreme Court was denied March 16, 1971.