Filed 12/19/13  P. v. Brock CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057175 |
| v. | (Super.Ct.No. INF062840) |
| BRANDON ANTHONY BROCK, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John J. Ryan, Judge. (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant Brandon Anthony Brock of robbery (count 1 – Pen. Code, § 211)[1] and found true an allegation he personally used a firearm (§ 12022.53, subd. (b)). Defendant thereafter admitted suffering a prior prison sentence (§ 667.5, subd. (b)). The court sentenced defendant to an aggregate, determinate term of imprisonment of five years four months. On appeal, defendant contends the court prejudicially erred in neglecting to give the standard jury instruction, CALCRIM No. 332, on expert witness testimony. We affirm.

FACTS

On December 14, 2007, at approximately 5:10 p.m., the victim was working on mailboxes in his workshop adjacent to his mobilehome. The victim had the solid wooden door to the shed open, but the screen door closed. He heard someone outside, so he went out to see if he could help the individual. Defendant said he was looking for Bill; the victim responded "'I'm Bill. What can I do for you?'"; defendant said he was told to come there, that "Bill was the one with . . . all the shit"; the victim told him he "must have the wrong Bill."

The victim turned around and reentered his workroom. He then heard the wooden door close behind him. The victim turned around to see defendant standing with a sawed-off shotgun pointed at him. Defendant said "'This is a robbery.'" The

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

victim replied "'I'm sorry. I don't have any money.'" Defendant asked "'What's in your . . . pockets?'"

The victim said "'I've got my wallet.'" He took his wallet out, walked over, and handed it to defendant. Defendant then asked what else the victim had in his pockets. The victim responded he had a cigarette lighter and his car keys; defendant told the victim to give them to him. The victim went to hand defendant the items, but dropped them.

Defendant reached out in an unsuccessful attempt to catch them and looked down at the lighter and keys; the victim attempted to knock the barrel of the shotgun away, grabbed defendant toward him, and head butted him. The victim fell backward with defendant on top of him. They began struggling for possession of the shotgun; however, defendant had a sling on the shotgun around his neck, so the victim could not get it away from defendant.

Defendant punched the victim on the side of the victim's face. The victim put his thumb inside the trigger guard and squeezed it; the shotgun went off. The shotgun fired a second time during the continued struggle. The victim kicked defendant in the groin area forcing defendant off him. Defendant took off running outside the door of the workroom with the victim's wallet and keys. Two spent 12-gauge shotgun casings were later found inside the workroom.

The victim called to his girlfriend inside the mobilehome to call the police, which she did. He saw defendant enter the passenger side of a dark-colored vehicle, which

drove off. The victim described defendant to police as white, 5'6" to 5'7", 160 to 180 pounds, 22 to 24 years old, and wearing an eye patch over his right eye.

The victim's girlfriend testified that on the same date and time she heard arguing and then "a great big boom." She heard a second "big boom" shortly after. She then saw a figure in black go by, get in the passenger side of a car backed into their driveway, and leave. She described the individual to police as Hispanic, 5'5" or 5'6", 175 pounds, and between 24 and 25 years old.[2]

On January 31, 2008, the victim identified defendant from a photographic lineup. On November 1, 2010, the victim identified defendant in court as his assailant at the preliminary hearing. The victim also identified defendant at trial.

Fontana police officer David Janusz testified he was on patrol on December 23, 2007, at around 1:22 a.m. when a vehicle without lights caught his attention. He attempted to conduct a traffic stop, but the car ignored his emergency lights and sirens and led him on a high speed pursuit. The pursuit ended when the vehicle crashed through three chain-link fences and the occupant fled on foot. Janusz pursued the suspect on foot until he apprehended him; the suspect was defendant.

As defendant fled, he discarded 12-gauge shotgun shells from his pockets. Janusz handcuffed defendant and put him in the rear seat of his patrol vehicle. He then backtracked along the route of the foot pursuit and found three 12-gauge shotgun rounds.

---

[2] The victim's girlfriend told police she only believed the perpetrator was a man by the way he walked, she did not get a good look at him, only saw a portion of his face in the darkness, and defendant appeared to be hiding his face from her.

In defendant's vehicle, he found a Mossberg 12-gauge pump-action shotgun loaded with five, double-ought buck shells sitting on the driver's seat.[3] Defendant was 24 years old at the time, 5'8", 160 pounds, white, and had a blind or deformed right eye.

Janusz additionally testified "[t]hrough my training and experience, I know that once a weapon is used, it's usually – – either the subject either tries to sell it and/or give it to somebody else to hold it for them away from their residence." "The term we usually use is once the gun is hot, which means whoever is in possession of it has used it in a crime and they believe that it could link them to a crime, they will usually either try to sell that weapon or give it to somebody they trust to store it for them."

DISCUSSION

Defendant contends the court prejudicially erred in neglecting to give, sua sponte, the jury instruction on how to evaluate expert witness testimony. Particularly, defendant argues Janusz's testimony that a criminal rids himself of a weapon used in a crime may have prejudicially compelled the jurors to view Janusz's testimony that defendant was arrested with another gun as evidence corroborating the victim's identification of defendant as the perpetrator. Although the court erred in failing to instruct the jury with CALCRIM No. 332, we hold defendant suffered no prejudice.

---

[3] It was not the same shotgun used in the robbery of the victim. The victim described the shotgun used during the robbery as a "Remington style semiautomatic shotgun that had been modified. The barrel had been cut off, and the butt part of the stock had been – – the shoulder part of the stock had been also cut off or broken." The only similarity the two guns shared was that they were both 12-gauge shotguns.

"The instruction called for by Penal Code section 1127b must be given *sua sponte* where expert testimony has been received. [Citations.]" (*People v. Reeder* (1976) 65 Cal.App.3d 235, 241.) "However, the erroneous failure to instruct on the weight of expert testimony is not prejudicial unless the reviewing court, upon an examination of the entire cause, determines that the jury might have rendered a different verdict had the omitted instruction been given. [Citation.]" (*Ibid*.)

Here, defendant suffered no prejudice from the court's failure to instruct the jury with CALCRIM No. 332, because the victim's testimony overwhelmingly supported the identification of defendant as the perpetrator of the robbery. The victim testified he had four big spotlights turned on in his workroom: "[I]t was very well-lit in the work room [*sic*]." The victim and defendant were face-to-face for approximately five minutes: "It seemed like an eternity . . . ." The victim's description of defendant to the police matched defendant.

The victim identified defendant on three separate occasions: in a six-pack photographic lineup on January 31, 2008, at the preliminary hearing on November 1, 2010, and at trial. The victim testified he was 100 percent sure defendant was the perpetrator, he never had any doubt it was defendant, and the trauma of the incident made him "see that face every now and then at night." "Well, the memory of that face in my memory, I'll never forget it. It's one of those things that I was so scared at the time that I'd never forget his face."

Finally, the court instructed the jurors with both CALCRIM Nos. 105 and 226 regarding their responsibility and the manner in which to evaluate the credibility of witnesses. Thus, in no way was the jury left with the impression they had to accept the opinions of an expert witness as true. (*People v. Dewitt* (1950) 98 Cal.App.2d 709, 718 [Instruction given on evaluating the credibility of witnesses relevant when determining whether court prejudicially erred in failing to instruct on expert witness testimony.]; *People v. Lynch* (1971) 14 Cal.App.3d 602, 609-610 [same].) Therefore, it was not reasonably probable defendant would have obtained a more favorable outcome had the court instructed the jury with CALCRIM No. 332.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

RICHLI

J.

CODRINGTON

J.

7