Filed 3/11/15  P. v. Mastrangelo CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GREGORY ALLEN MASTRANGELO,<br><br>    Defendant and Appellant. | B252685<br><br>(Los Angeles County<br>Super. Ct. No. NA096246) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James B. Pierce, Judge.  Affirmed.

Gail Ganaja, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James W. Bilderback II, Supervising Deputy Attorney General, and William N. Frank, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury found Gregory Allen Mastrangelo guilty of one count of unlawfully driving or taking a vehicle. Mastrangelo appeals, arguing the trial court prejudicially erred in failing to instruct the jury, sua sponte, on the weight to be given to the expert testimony of Police Officer Andrew Fox. We affirm.

## BACKGROUND

An information charged Mastrangelo with one count of unlawfully driving or taking a vehicle, in violation of Vehicle Code section 10851, subdivision (a),[1] and alleged Mastrangelo suffered seven prior felony convictions, which rendered him ineligible for probation in absence of unusual circumstances (Pen. Code, § 1203, subd. (e)(4)).

Mastrangelo pleaded not guilty. On October 23, 2013, a jury found Mastrangelo guilty of the charged offense.

On October 31, 2013, the trial court sentenced Mastrangelo to county jail for the two-year middle term, to be served concurrently with Mastrangelo's four-year jail sentence in Los Angeles County Superior Court case number NA096562. The court awarded Mastrangelo presentence credit of 84 days and imposed various fines and penalties. Mastrangelo filed a timely notice of appeal.

## FACTS

At trial, Raul Remberto Vasquez Galan testified that on the evening of June 24, 2013, he attended a family party at his son's house on Norton Street in Long Beach. Vasquez drove to his son's house in his 1995 Honda Accord (the Accord). After the party, he drove home with his wife in a different car and left his Honda Accord parked on the street in front of his son's house overnight. Vasquez had the only keys to his car. The next day, Vasquez's son called Vasquez to tell him his car was missing. Vasquez filed a police report the same day.

Around 8:00 p.m. on July 10, 2013, Long Beach Police Officer Andrew Fox and his partner were on duty when they saw Mastrangelo driving toward them in a red Honda.

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

2

Officer Fox conducted a license plate check and discovered the vehicle had been reported as stolen. The two officers quickly made a U-turn and caught up with the vehicle. They did not turn on their lights and sirens. When Mastrangelo noticed the police car, he made a sudden hard right turn and parked the car against the curb. The police officers parked behind the vehicle, turned on their lights and sirens, drew their weapons, and ordered Mastrangelo out of the car. Mastrangelo was compliant. He told the officers he lived on Norton Street, in close proximity to where he was arrested.

Officer Fox's partner placed Mastrangelo in handcuffs and Officer Fox searched the vehicle. Officer Fox observed a radio had been pulled out of the center console and there was a lone, single key in the ignition. When he removed the key from the ignition, the entire ignition system came out. Officer Fox testified this is "not normal." Officer Fox also testified that the key appeared to be a "shaved key" and described the key as having scrape marks and teeth that were "ground down." This key would only work on the car's ignition; it did not lock or unlock the four car doors.

Officer Fox testified he had received training on shaved keys and vehicle thefts as a part of his academy work at the Long Beach Police Department. Additionally, as of the time of trial, Officer Fox had participated in 20 to 25 stolen vehicle investigations, during which he had observed the use of shaved keys. Officer Fox explained keys typically have teeth that go into a lock and bypass the tumblers, which enables a door to be opened. In the case of a shaved key, however, the teeth of a generic car key are ground down, enabling the key to bypass the tumblers in an ignition to allow a car to start. Generally, a shaved key will work in a car ignition but not a door.

Vasquez retrieved his car from the impound yard in July 2013. The Accord's condition had been altered, as it was now missing the stereo and the ignition that had been in the steering column. Vasquez testified he had never previously seen the key that was found in the ignition by Officer Fox. Additionally, Vasquez did not try to sell his car to anyone, including Mastrangelo, between the date he reported it stolen on June 25, 2013 and the date of Mastrangelo's arrest. Vasquez testified he had never met Mastrangelo and did not give Mastrangelo permission to drive his Accord.

3

Mastrangelo testified that on July 2, 2013, Mastrangelo was at home on Norton Street working on his Isuzu Trooper (the Trooper) when a man named Raul (not Vasquez) came by in a red Accord, offering to sell Mastrangelo the Accord. Raul told Mastrangelo the car belonged to his family members and that he (Raul) had permission to sell the car. Mastrangelo needed a car to get to work and school, so he agreed to buy it. Mastrangelo gave Raul $250 as a down payment on the car and agreed to pay $250 upon receipt of the car. Raul showed Mastrangelo the registration and insurance documents for the car but told him the pink slip was missing.

Mastrangelo testified he had seen Raul "around the neighborhood." Mastrangelo did not know Raul's last name, did not have Raul's phone number, and never asked to see Raul's driver's license. Mastrangelo testified he did not ask for this information because he trusted Raul and felt he could easily find him, as Raul lived in the same neighborhood as Mastrangelo. Mastrangelo further explained the casual nature of the car purchase was routine for him, as he had acquired several cars from friends, which came without bills of sale or transfers of liability. Mastrangelo testified Raul did not provide him with any type of sale or transfer of liability documentation for the vehicle, but instead gave him a "makeshift sale." Mastrangelo did not bring this "makeshift sale" document with him to trial.

Mastrangelo testified he worked seasonally at the Del Mar Race Track. He was in need of a car because the power steering in his Trooper did not work. Raul promised to give the car to Mastrangelo on July 3, 2013. Mastrangelo needed the car to get to work on July 3, 2013. However, Raul did not deliver the car on July 3.

Mastrangelo did not come into possession of the Accord until July 10, 2013 around 5:00 p.m. Mastrangelo's friend, "Baby Jay" called Mastrangelo and told him the car was at his house. Mastrangelo rode his bike to Baby Jay's house and picked up the car. Mastrangelo did not pay the additional $250 he had agreed to pay Raul because Raul was not present at Baby Jay's house at the time. When Mastrangelo picked up the car, it was in fairly good condition, and the ignition was intact. However, the CD player had been disconnected and Mastrangelo found it in the trunk of the Accord.

4

Mastrangelo testified he purchased the key found by Officer Fox in the Accord. Mastrangelo bought the key from a "key guy" who makes keys for Hondas and Isuzu Troopers. Mastrangelo purchased a key for the Trooper and a key for the Accord for $150 before he went to Baby Jay's to pick up the car. Mastrangelo testified the key is not a shaved key, but is a generic key that can be purchased at auto stores to open doors and start ignitions. Mastrangelo testified the key worked in the ignition and unlocked the trunk but the key would not open the car doors.

Detective Bruce Robertson testified that he spoke to Mastrangelo at the Long Beach City Jail after Mastrangelo's arrest. Mastrangelo waived his Miranda rights. Detective Robertson testified that Mastrangelo told him he had purchased a stolen vehicle for $250. On cross-examination, however, Detective Robertson recanted his statement and admitted Mastrangelo did not make a direct admission of guilt. Instead, Mastrangelo simply told Detective Robertson that he (Mastrangelo) had purchased a vehicle. Mastrangelo denied having stolen a car.

Mastrangelo told Detective Robertson he had only been in possession of the car for four to five hours prior to his arrest. Detective Robertson asked Mastrangelo if the person who sold him the vehicle had given him any sort of transfer of sale document and Mastrangelo replied he had been told there were some papers in the glove box of the car but he had not filled anything out. Mastrangelo said nothing about receiving a makeshift transfer of sale.

## DISCUSSION

Mastrangelo contends the trial court prejudicially erred in failing to instruct the jury, sua sponte, on the weight to be given to Officer Fox's testimony because Officer Fox's testimony qualified as expert testimony. When expert testimony is received at trial, the court must instruct the jury, sua sponte, on evaluating the expert's testimony. (Pen. Code, § 1127b[2]; *People v. Reeder* (1976) 65 Cal.App.3d 235, 241.) We will not

---

[2] Penal Code section 1127b provides: "When, in any criminal trial or proceeding, the opinion of any expert witness is received in evidence, the court shall instruct the jury substantially as follows: [¶] Duly qualified experts may give their opinions on questions

5

reverse for a failure to instruct on expert testimony, however, unless it appears reasonably probable that, had an instruction been given, the jury would have rendered a verdict more favorable to the appellant. (*People v. Williams* (1988) 45 Cal.3d 1268, 1320, abrogated on another ground as recognized in *People v. Abilez* (2007) 41 Cal.4th 472, 518–519.)

## I.     A portion of Officer Fox's testimony qualified as expert testimony.

Evidence Code section 801, subdivision (a), defines expert testimony as opinion testimony "[r]elated to a subject that is sufficiently beyond common experience." Evidence Code section 720, subdivision (a) states that a person is "qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates."

At trial, Officer Fox testified he found a single, "shaved" key in the stolen Accord's ignition. He testified the key had "scrape marks" on it and looked as if it had been scraped on asphalt. Officer Fox explained that generally, keys have teeth that go into a lock, bypass the tumblers, and enable a door to be opened. In the case of a shaved key, however, the teeth on a generic car key are ground down, which enables the key to bypass the tumblers and start a car. Officer Fox also testified that a shaved key usually will not work in a door.

Officer Fox's testimony regarding facts and his observations on the night Mastrangelo was arrested did not amount to expert testimony. Even Officer Fox's testimony of his observations relating to the shaved key did not amount to expert testimony. However, once Officer Fox testified and explained how shaved keys are created and how they operate, he arguably gave expert testimony because he testified about a subject matter beyond the common knowledge of an average lay juror. Moreover, Officer Fox testified that as an officer of the Long Beach Police Department,

---

in controversy at a trial. To assist the jury in deciding such questions, the jury may consider the opinion with the reasons stated therefor, if any, by the expert who gives the opinion. The jury is not bound to accept the opinion of any expert as conclusive, but should give to it the weight to which they shall find it to be entitled. The jury may, however, disregard any such opinion if it shall be found by them to be unreasonable. [¶] No further instruction on the subject of opinion evidence need be given."

he had received training on shaved keys and vehicle thefts and had participated in 20 to 25 stolen vehicle investigations. Officer Fox testified he had seen shaved keys in ignitions during the 20 to 25 stolen vehicle investigations in which he participated. Officer Fox made the statements about the way shaved keys operate based on his special knowledge, experience, and training as a police officer and, therefore, this testimony likely qualified as expert testimony.

Respondent asserts Officer Fox did not give expert testimony because the trial court prevented the prosecutor from eliciting any testimony about whether shaved keys are common in cases of car theft, based on Officer Fox's training on stolen vehicles and his participation in 20 to 25 stolen vehicle investigations. We conclude that while the trial court did prevent Officer Fox from correlating shaved keys to auto thefts, the line had likely already been crossed when Officer Fox testified about the way shaved keys are created and how they operate.

## II. The failure to give an expert jury instruction was harmless error.

Assuming Officer Fox's testimony amounted to expert testimony, it triggered the court's sua sponte duty to instruct on expert witness testimony. (*People v. Reeder*, *supra*, 65 Cal.App.3d at p. 241.) Accordingly, the trial court had a sua sponte duty to instruct the jury with CALCRIM No. 332 regarding the weight to be given to Officer Fox's testimony. However, an "'erroneous failure to instruct the jury regarding the weight of expert testimony is not prejudicial unless the reviewing court, upon an examination of the entire [case], determines that the jury may have rendered a different verdict had the omitted instruction been given.'" (*People v. Lynch* (1971) 14 Cal.App.3d 602, 610.) Assuming Officer Fox provided expert testimony and the trial court thus sua sponte should have instructed under CALCRIM No. 332, Mastrangelo cannot show it is reasonably probable he would have obtained a more favorable result had the jury been so instructed.

*A. The trial court's failure to give an expert jury instruction was harmless error because the jury was adequately instructed based on the jury instructions given at trial.*

CALCRIM No. 226 was given at trial and instructed the jury on evaluating witness testimony.[3] CALCRIM No. 332 was not given at trial and instructs a jury on evaluating expert testimony.[4] CALCRIM No. 332 instructs the jury to consider the expert's knowledge, skill, experience, training, education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. The trial court's failure to instruct the jury with CALCRIM No. 332, however, is harmless error, in part because CALCRIM No. 226 broadly and similarly instructs the jury to a substantial degree and incorporates the methodology of CALCRIM No. 332.

Like CALCRIM No. 332, which incorporates CALCRIM No. 226 and instructs the jury to follow instructions about the believability of witnesses generally in evaluating the believability of an expert witness, CALCRIM No. 226 instructed the jury to judge the credibility or believability of the witness. Like CALCRIM No. 332, furthermore, which instructs the jury that the meaning and importance of an expert's opinion are for it to

---

[3] CALCRIM No. 226 provides: "You alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience. You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have. [¶] You may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe. [¶] In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony."

[4] CALCRIM No. 332 provides: "A witness was . . . allowed to testify as [an] expert[] and to give [an] opinion[]. You must consider the opinion[], but you are not required to accept [it] as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally. In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. You must decide whether information on which the expert relied was true and accurate. You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

8

decide, CALCRIM No. 226 instructed the jury to use its common sense and experience to decide which testimony it found true and accurate and how much of the witness testimony it believed. Additionally, similar to CALCRIM No. 332, which instructs the jury to consider the expert's opinion but states it is not required to accept the opinion as true or correct, CALCRIM No. 226 instructed the jury to consider the testimony of each witness and decide how much of the testimony it believes, noting that the jury may believe "all, part, or none of any witness's testimony." Finally, CALCRIM No. 226 adequately equipped the jury to evaluate Officer Fox's testimony because the instruction broadly instructed the jury to consider anything that reasonably tends to prove or disprove the truth or accuracy of his testimony.

Moreover, jury instructions are not considered in isolation; the entire charge to the jury must be considered in determining whether instructions were correct and adequate. (*People v. Holt* (1997) 15 Cal.4th 619, 677.) The trial court instructed the jury with CALCRIM No. 200,[5] which informed the jurors they must decide the facts of the case and that the jury alone must decide what happened. CALCRIM No. 200[6] also instructed the jury to consider all of the jury instructions together, and to consider them equally. The trial court further instructed the jury with CALCRIM No. 301,[7] which states that the testimony of only one witness can prove any fact and CALCRIM No. 302,[8] which

---

[5] California Criminal Jury Instruction No. 200 provides, in pertinent part: "You must decide what the facts are. It is up to all of you, and you alone to decide what happened, based only on the evidence that has been presented to you in this trial."

[6] California Criminal Jury Instruction No. 200 provides, in pertinent part: "Pay careful attention to all of these instructions and consider them together . . . [¶] . . . [¶] After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

[7] California Criminal Jury Instruction No. 301 provides: "The testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence."

[8] California Criminal Jury Instruction No. 302 provides: "If you determine there is a conflict in the evidence, you must decide what evidence, if any, to believe. . . . What

9

instructs the jury on how to deal with conflicting evidence. Given the jury instructions given and the specific instruction to consider all the jury instructions together, the jury was adequately equipped to evaluate Officer Fox's testimony.

**B.      *The Trial Court's Failure to Give an Expert Jury Instruction Was Harmless Error Because Strong Evidence Beyond Officer Fox's Testimony Regarding Shaved Keys Supported the Jury's Verdict.***

Assuming Officer Fox's testimony was expert testimony, the trial court's failure to instruct the jury with CALCRIM No. 332 was also harmless error because it is not reasonably probable that without his testimony, the jury would have rendered a verdict more favorable to Mastrangelo, since there was strong evidence to support the jury's verdict. To establish that a defendant violated section 10851, subdivision (a), the prosecution must prove (1) the defendant drove or took a vehicle belonging to another person, without the owner's consent, and (2) the defendant had the specific intent to permanently or temporarily deprive the owner of title or possession. Mastrangelo satisfied the first element when he drove the Accord without Vasquez's permission and at a time when the evidence established the vehicle had been reported stolen. With respect to the second element, Mastrangelo asserts that without Officer Fox's testimony about shaved keys, there was a reasonable chance the jury would not have found the second element satisfied, and would have reached a more favorable verdict. We disagree.

Knowledge that a vehicle was stolen may constitute evidence of the defendant's intent to deprive the owner of title and possession. (*People v. Green* (1995) 34 Cal.App.4th 165, 180.) Mastrangelo's own testimony supported the conclusion he had the specific intent to deprive the rightful owner of possession of the car because he knew the Accord was stolen. Mastrangelo testified he purchased the car from a man named Raul (which is conveniently the same first name of the legal owner of the stolen Accord) whom he knew from seeing him "around the neighborhood." Raul Remberto Vasquez

is important is whether the testimony or any other evidence convinces you, not just the number of witnesses who testify about a certain point."

10

Galan, the legal owner of the Accord, testified he neither sold the Accord to Mastrangelo nor gave Mastrangelo permission to drive the Accord. Mastrangelo further testified that he never asked to see Raul's driver's license, which was a form of identification to verify whether the name of the man selling him the car was, in fact, Raul, and whether the seller's full name matched the registration. Mastrangelo testified he did not know Raul's last name and did not have any of Raul's contact information, despite the fact that he paid Raul $250 for the Accord up front on July 2, 2013 and did not pick up the car until July 10, 2013. Mastrangelo's behavior defies common sense. Once Mastrangelo handed $250 over to Raul on July 2, he had a substantial incentive to protect his financial interests. Yet based on his testimony, he did not do so, as he could not contact Raul unless he happened to see Raul in the neighborhood. Mastrangelo's behavior is highly indicative of an illegal transaction, and the circumstances under which Mastrangelo purchased the Accord strongly support a conclusion that Mastrangelo had knowledge this car was stolen and that his use of the car would deprive the rightful owner of its possession.

Mastrangelo testified that when he purchased the car from Raul, Raul showed him registration and insurance documents but told him the pink slip had been lost. Mastrangelo subsequently testified Raul gave him a "makeshift sale" document, which Mastrangelo did not bring to trial. It is highly suspicious Mastrangelo did not bring the one document that might have had the potential to vindicate him. Additionally, when Detective Robertson questioned Mastrangelo about the car title documentation at the jail, Mastrangelo told the detective there were some papers in the glove box but he had not filled anything out. Mastrangelo did not say anything to the detective about receiving a makeshift or informal written transfer of sale. Mastrangelo's description of the title to the car varied throughout the trial, as did his story regarding whether he received documentation from Raul to evidence a sale of the car.

Additional evidence of Mastrangelo's specific intent to deprive the rightful owner of the Accord includes Vasquez's testimony that he had the only set of keys to the Accord, and Mastrangelo's admission that he had purchased a key from a third party for

11

$150 *before* he went to pick up the car (which was the same key that was found in the car's ignition on the night of his arrest).  Since car keys are usually included in legal car purchases, this strongly shows Mastrangelo had knowledge the car was stolen before it came into his possession.  Mastrangelo corroborated Officer Fox's observation that the key did not, in fact, operate the car's doors and that the ignition had been tampered with, causing it to fall out when Officer Fox removed the key from the ignition.  Officer Fox also testified he observed a lone key in the ignition on the night of Mastrangelo's arrest, which is uncommon, as most people tend to put their car key on a keychain with additional keys.  Assuming Officer Fox's testimony explaining what a shaved key is and how a shaved key functions was expert testimony, the trial court's failure to instruct the jury with CALCRIM No. 332 was harmless error.  It was not reasonably probable the jury would have reached a more favorable verdict, given the ample evidence from which a jury could infer Mastrangelo violated section 10851, subdivision (a).

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.

We concur:


ROTHSCHILD, P. J.


CHANEY, J.


12